**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | |
|---|---|
| JON MICHAEL VITALE,<br><br>       Plaintiff,<br><br>  v.<br><br>MIMEDX GROUP, INC., PARKER H. PETIT, and WILLIAM C. TAYLOR,<br><br>       Defendants. | Civil Action No. _____ |

# EXHIBIT A
# Notice of Removal

ELECTRONICALLY FILED - 2019 Jan 21 8:32 AM - RICHLAND - COMMON PLEAS - CASE#2019CP4000398

| STATE OF SOUTH CAROLINA | IN THE COURT OF COMMON PLEAS |
|---|---|
| COUNTY OF RICHLAND | IN THE FIFTH JUDICIAL CIRCUIT |
| | CASE NO. 2019-CP-40- |

Jon Michael Vitale,

                Plaintiff,

v.

Mimedx Group, Inc., Parker H. Petit, and William C. Taylor.

                Defendants.

**SUMMONS**

TO THE DEFENDANT ABOVE NAMED:

YOU ARE HEREBY SUMMONED and required to answer the Complaint herein, a copy of which is served upon you, and to serve a copy of your answer to this Complaint upon the subscriber at the address shown below within thirty (30) days (thirty five (35) days if served by United States Mail) after service hereof, exclusive of the date of such service, and if you fail to answer the Complaint, judgment by default will be rendered against you for the relief demanded in the Complaint.

                **CROMER BABB PORTER & HICKS, LLC**

                BY:    s/J. Paul Porter
                            J. Paul Porter (# 100723)
                            1418 Laurel Street, Ste. A
                            Post Office Box 11675
                            Columbia, South Carolina 29211
                            Phone  803-799-9530
                            Fax     803-799-9533
                       *Attorneys for Plaintiff*

January 21, 2019
Columbia, South Carolina

1

ELECTRONICALLY FILED - 2019 Jan 21 8:32 AM - RICHLAND - COMMON PLEAS - CASE#2019CP4000398

| | |
|---|---|
| STATE OF SOUTH CAROLINA<br><br>COUNTY OF RICHLAND | IN THE COURT OF COMMON PLEAS<br>IN THE FIFTH JUDICIAL CIRCUIT<br>CASE NO. 2019-CP-40- |
| Jon Michael Vitale,<br><br>                Plaintiff,<br><br>v.<br><br>Mimedx Group, Inc., Parker H. Petit, and William C. Taylor.<br><br>                Defendants. | **COMPLAINT**<br>(Jury Trial Demanded) |

EMPLOYMENT CASE

The Plaintiff, complaining of the Defendant, respectfully alleges as follows.

PARTIES AND JURISDICTION

1. The Plaintiff Jon Michael Vitale is a citizen and resident of Richland County, South Carolina.

2. Defendant Mimedx Group, Inc. is a publicly traded company registered in Florida, and headquartered in Marietta, Georgia. Defendant Mimedx does business throughout the United States including in South Carolina where it is involved in the for-profit business of selling human amniotic tissue and tissue grafts ("substitute skin") and where it employed Plaintiff.

3. Defendant Parker H. Petit resides, upon information and belief, in Marietta, Georgia and was the CEO and Chairman of the Board for Defendant Mimedx.

4. Defendant William C. Taylor resides, upon information and belief, in Marietta, Georgia and was President and COO and a Board Member of Defendant Mimedx.

2

5. Defendant Mimedx employed the Plaintiff in Richland County for approximately three years as an Account Executive.

6. The Defendants are sufficiently connected to this Court for this Court to exercise personal jurisdiction.

7. This action alleges wrongful discharge, defamation/slander, and unjust enrichment arising under the Common Law of South Carolina.

8. The parties have sufficient connections to Richland County, the occurrences giving rise to this action occurred in Richland County, and jurisdiction and venue are properly exercised by this Court.

FACTUAL ALLEGATIONS

9. Plaintiff was hired on January 27, 2014 as an Account Executive by Defendant Mimedx.

10. Plaintiff, as an Account Executive, acted as a field representative for Defendant Mimedx meaning it was his responsibility to place, bill, and sell Mimedx product to health care providers.

11. Plaintiff was compensated in a manner that provided for base and commission pay.

12. Plaintiff worked in this particular field (selling skin-related products) for 17 years prior to coming to Mimedx.

13. Plaintiff at all times met the legitimate performance expectations of Mimedx.

14. Plaintiff received only one disciplinary action during his tenure, prior to the termination that gives rise to this action. That disciplinary action was unrelated to

3

ELECTRONICALLY FILED - 2019 Jan 21 8:32 AM - RICHLAND - COMMON PLEAS - CASE#2019CP4000398

ELECTRONICALLY FILED - 2019 Jan 21 8:32 AM - RICHLAND - COMMON PLEAS - CASE#2019CP4000398

events giving rise to this action, minor in nature, and referred specifically to Plaintiff accidentally sending a work email from a personal account.

15. Plaintiff did not receive any other discipline formal or informal during his tenure.

16. Plaintiff's performance was not regularly reviewed; however, he was ranked based on his sales.

17. Plaintiff was ranked in the top 10% during his first year at Mimedx and was awarded a President's Club distinction. Plaintiff surpassed his sales goals the following year and was ranked in the top 15% despite a reduction in the size of his territory. Prior to his termination, Plaintiff was on track to meet, if not surpass, sales goals for his third year despite a smaller territory and outside circumstances bringing about the loss of a federal government client.

18. Defendant Mimedx is currently under investigation and subject to a number of lawsuits dealing with an unlawful, endemic, and nationwide scheme known as "channel stuffing." Channel stuffing, put simply, occurs when Mimedx sends a larger quantity of product than purchased to a purchaser to create the appearance of higher levels of sales to investors.

19. Defendant Mimedx is currently subject to a lawsuit by employees retaliated against for reporting this practice.

20. One of Plaintiff's primary accounts was the Dorn Veterans Affairs Hospital in Columbia, South Carolina ("Dorn VA").

21. Defendant Mimedx sold to Dorn VA through a middle-man corporation, AvKare, Inc., who had priority federal contractor status.

4

ELECTRONICALLY FILED - 2019 Jan 21 8:32 AM - RICHLAND - COMMON PLEAS - CASE#2019CP4000398

22. Defendant Mimedx engaged in channel stuffing with respect to Plaintiff's account with the Dorn VA.

23. In or around April 2016, Christopher Clay Jones, a new Assistant Chief of Prosthetics, was placed at the Dorn VA.

24. Mr. Jones informed Plaintiff in May 2016 that Dorn VA could no longer hold Mimedx products on consignment without a consignment agreement.

25. Mr. Jones was specifically referring to a number of boxes of Mimedx Product being held at Dorn VA which was not yet purchased by Dorn VA, but which Mimedx (through AvKare) shipped to Dorn VA to create the appearance of additional sales to its investors thereby "stuffing the channel."

26. The excess product at issue in this matter was valued at approximately $400,000.00.

27. Plaintiff inquired to Mimedx as to what he should do with excess product.

28. Defendant Mimedx initially stated that they did not care what Plaintiff did with the product, but that it could not be shipped back to Mimedx until further notice.

29. Defendant Mimedx did not want the product returned because it would have to count the product as a returned or loss sale in its quarterly earnings reports. Had Plaintiff returned the product, it would have constituted nearly 1% reduction to the entire company's quarterly earnings for Quarter 2, 2016. Furthermore, Plaintiff's account was not the only account affected by Mr. Jones' directive; thus, upon information and belief, an even greater share of profit stood to be undermined had Mimedx appropriately requested that the materials be returned or had not channel stuffed in the first place. Specifically, had the product

5

for all effected accounts been appropriately returned Mimedx would have had to disclose to investors that it missed its upper end guidance on sales for that quarter.

30. Defendant Mimedx first asked Plaintiff to "hide" the materials at Dorn VA. When Plaintiff told Defendant he could not, Defendant directed him to store the product at his house.

31. Defendant should not have directed Plaintiff to store the product at his home because Defendant Mimedx's medical-grade product must be stored in a controlled environment and should only be kept where it is shipped unless a return authorization is made.

32. Defendant directed Plaintiff to ship the product back in November 2016.

33. Defendant relayed to Plaintiff that he could use its FedEx account; however, Defendant did not direct or require Plaintiff to use its FedEx account.

34. Plaintiff used UPS to ship product and materials to Defendant for the vast majority of his tenure because UPS was more convenient to his home.

35. Plaintiff, through dozens of UPS shipments, over the course of three years, never had any issue with product being safely and timely shipped to Defendant and was never counseled or disciplined for using UPS as opposed to FedEx.

36. Shipping via FedEx was a preference of Defendant, but it was not a requirement.

37. Plaintiff shipped the subject product back to Defendant on November 30, 2016.

38. Defendant received the package, and an employee of the Defendant signed for it, on December 2, 2016.

ELECTRONICALLY FILED - 2019 Jan 21 8:32 AM - RICHLAND - COMMON PLEAS - CASE#2019CP4000398

ELECTRONICALLY FILED - 2019 Jan 21 8:32 AM - RICHLAND - COMMON PLEAS - CASE#2019CP4000398

39. The same employee who signed for the subject package on the Defendant's behalf had previously and would later sign for packages received on the Defendant's behalf.

40. Defendant next claimed it did not receive the package and requested that Plaintiff file a loss of shipment claim on product's delivery insurance; rather than report the returned product as a lost sale (how it should have been reported.)

41. Plaintiff was confused by this directive as there had been no prior issues with UPS shipments, and the Defendant had not timely asked him about the status of the package.

42. Plaintiff investigated the delivery status of the package and determined that it was indeed delivered to Defendant and signed for by one of its employees.

43. Plaintiff asked the Defendant about this via email, telephone, and text message.

44. Plaintiff received bizarre responses including: that it did not receive packages on its loading dock, which it had done throughout Plaintiff's employment and that the employee who signed for the package did not work for Defendant, yet that employee had signed for earlier received and later received packages.

45. Plaintiff continued to ask questions about why he was being asked to fill out a claim for lost product on a received package, particularly via email.

46. Plaintiff received a phone call from a higher up employee on December 13, 2016 while engaged in an email conversation questioning the subject directive, where he was informed that "Debbie [Deborah] Dean [Defendant's Executive

7

ELECTRONICALLY FILED - 2019 Jan 21 8:32 AM - RICHLAND - COMMON PLEAS - CASE#2019CP4000398

Vice President of Compliance] said if you send one more fucking email you will be fired."

47. Plaintiff followed Defendant's directive to file a claim that the product, valued at approximately $352,000, was lost; however, he noted on the claim dated December 15, 2016 "I am the shipper & I believe Mimedx is attempting insurance fraud." (Exhibit 2: Claim Form).

48. Shortly thereafter on December 20, 2016, Defendant's Vice President of Sales Chris Cashman called Plaintiff. During that phone call, Plaintiff was grilled about whether or not he had worked for a competing entity. Plaintiff was asked:

   a) If he was employed by another company while employed by Defendant—Plaintiff truthfully answered no;

   b) If he received compensation from another company while employed by Defendant—Plaintiff truthfully answered no;

   c) If he promoted competitive products while employed by Defendant, and if he knew other employees who had—Plaintiff truthfully answered the first question no and stated that he was not going to talk about other employees; and

   d) If he knew of a company called Halo—Plaintiff was aware of Halo, a company that provides access to quality medical grade gauze and tape for low income patients; however, he did not fully answer the question because he feared the barrage of questions was intended to provide a pretextual basis to terminate him in the wakes of the concerns he had raised about insurance and investor fraud.

8

49. After his interview, Plaintiff continued working without issue for over a week. Plaintiff was not disciplined or counseled for his answers in the phone call with Mr. Cashman.

50. Plaintiff met with an attorney on December 29, 2016, to discuss his concerns that he was being set up for termination.

51. Plaintiff was previously required by Defendant to download spyware which allowed Defendant to track its sales employee's locations.

52. As Plaintiff met with an attorney, Defendant acted to wipe all pertinent information on Plaintiff's phone and computer.

53. Three hours later, Plaintiff received a call from Mr. Cashman where he was informed he was fired.

54. Plaintiff, in that conversation, repeatedly asked Mr. Cashman for a reason for his termination, but Mr. Cashman refused to provide one. Later, Mr. Cashman said that Plaintiff had wrongfully sent the above-discussed product via UPS and not FedEx and that he lied during his interview discussed in ¶ 47. Plaintiff replied that he had not competed with Defendant, and Mr. Cashman then became argumentative and began yelling.

55. Mr. Cashman closed by stating that since Plaintiff was being fired on December 29, 2016 (before the last work day of the month December 30, 2016), he would not receive his November and December commissions.

56. This lost commission cost Plaintiff over $20,000.00.

57. Defendant changed its reason for termination before the South Carolina Department of Employment and Workforce where it stated that Plaintiff was fired for using FedEx and for competing with Defendant.

9

ELECTRONICALLY FILED - 2019 Jan 21 8:32 AM - RICHLAND - COMMON PLEAS - CASE#2019CP4000398

58. Plaintiff did not compete with Defendant, at all, during his tenure.

59. Defendant's shifting reasons for Plaintiff's termination, and the falsity of those reasons indicates that the Defendant's proffered reasons for terminating Plaintiff were not the real reasons.

60. Rather, Plaintiff was fired because he questioned an attempt by the Defendant to commit insurance and investor fraud and because he sought legal assistance.

61. Notably, Defendant did not pursue its claim of lost property in a timely fashion which would have allowed it to collect approximately $352,000.00 were the product in question actually lost.

62. Defendant publicized statements of Defendant Taylor and Defendant Petit in the wake of Plaintiff's termination that have harmed Plaintiff's reputation.

63. Specifically, in an article discussing employees sued for competing with Defendant accessible by the general public and published the day after Plaintiff's discharge, Defendant released a statement by Defendant Taylor: ["Defendant] took employment actions against various other employees based on the degree of transgression and the openness and willingness of these employees to cooperate in the [Defendant's] investigation," and a statement by Defendant Petit: "We have taken disciplinary action against a small number of other sales employees . . . who were found to be associated with this or similar improper acts . . . When an employee violates the duty of loyalty and contractual obligations by selling competitive products or other products, employment actions must be taken . . . we are always disappointed when individuals decide to follow self-serving financial

10

motives rather than adhere to high standards of conduct and compliance that we instill at [Defendant]."

64. On May 11, 2018, Defendant Petit indicated in a comment to the Atlanta Journal-Constitution that an unnamed South Carolina representative was terminated a year and one-half prior was responsible for bribing Veterans Affairs officials. Plaintiff did not bribe Veteran's Affairs officials but is the only known South Carolina employee who was terminated during the referenced period, therefore the statement recklessly insinuates that Plaintiff was guilty of bribing federal employees.

65. These comments are false as applied to Plaintiff and have wrongfully defamed his character and fitness in his profession of 20 years.

**FOR A FIRST CAUSE OF ACTION**
**Against Defendant Mimedx**
(Public Policy Discharge)

66. Plaintiff realleges the foregoing where consistent.

67. Plaintiff was terminated for refusing to violate the law, to perpetuate a coverup, and in in violation of clear mandates of public policy which include the following:

      a) Federal and State laws and regulations having to do with channel stuffing and the waste or misuse of public monies.

      b) The public policies outlined in the Insurance Fraud and Reporting Immunity Act. S.C. Code Ann.

      c) Federal and State laws and regulations having to do with transparent disclosure of income to investors.

11

ELECTRONICALLY FILED - 2019 Jan 21 8:32 AM - RICHLAND - COMMON PLEAS - CASE#2019CP4000398

ELECTRONICALLY FILED - 2019 Jan 21 8:32 AM - RICHLAND - COMMON PLEAS - CASE#2019CP4000398

d) Federal and State laws and regulations having to do with a person's right to consult legal counsel.

e) Federal and State laws and regulations having to do with the proper storage of Defendant Mimedx product.

68. Defendant's stated reason for Plaintiff's termination was pretextual and has shifted over time.

69. Plaintiff's prior positive performance record, pretext, and the temporal proximity between his termination and protected activity (including his questioning practices that violated the above referenced public policies) indicate that Plaintiff was terminated wrongfully in violation of clear mandates of public policy and for questioning directives that he violate the law.

70. The same amounts to an actionable wrongful discharge for which Defendant Mimedx is liable.

71. Plaintiff has suffered damages as a result of this discharge which include lost wages, lost benefits, diminished earning capacity, emotional pain and suffering, lost companionship, loss of sleep, and stress and anxiety.

72. The conduct of Defendant Mimedx with respect to this claim was intentional and Plaintiff is also entitled to punitive damages.

**FOR A SECOND CAUSE OF ACTION**
**Against all Defendants**
(Defamation/Slander)

73. Where not inconsistent herewith, the Plaintiff realleges the foregoing paragraphs.

74. Defendants defamed and slandered Plaintiff by terminating him on false grounds and then falsely stating or insinuating in at least two separate media

12

publications that Plaintiff was terminated for actions that amount to criminal misconduct and professional unfitness.

75. The statements made by the Defendants about Plaintiff and the asserted grounds for his termination were false and the Defendants knew or should have known of the falsity thereof.

76. The defamation alleged here was malicious and has lessened Plaintiff's professional standing.

77. Plaintiff has suffered damages for which the Defendants are liable, as a result of the defamation and slander alleged in this case, to include diminished earning capacity, lost income, reputational loss, embarrassment, lost goodwill, shock, embarrassment, humiliation, and emotional pain and suffering.

78. The conduct of Defendants, with respect to this claim, was intentional, and Plaintiff is also entitled to punitive damages.

### FOR A THIRD CAUSE OF ACTION
**Against Mimedx**
(Unjust Enrichment)

79. Plaintiff realleges the foregoing where consistent.

80. Plaintiff was fired on December 29, 2018 with the expressed intention of the Defendant Mimedx to avoid paying him due commissions for work he had already performed.

81. Plaintiff estimates the due commissions for completed work to be approximately $20,000.00.

82. Defendant Mimedx retained the benefit of Plaintiff's work and value of that money unlawfully and intentionally.

13

83. Plaintiff is due his unpaid December commissions for completed work, prejudgment interest on the same, and any other relief the Court deems just and proper.

PRAYER FOR RELIEF

84. Plaintiff realleges the foregoing where consistent.

85. Plaintiff demands a jury trial on all claims and other triable matters.

86. Plaintiff requests that the jury award him all legally cognizable damages on the above stated claims where alleged and as otherwise recoverable.

87. Plaintiff asks the Court for all other equitable relief it deems just and proper.

88. Plaintiff requests damages on his defamation be awarded jointly and severally.

89. Plaintiff requests punitive damages for the intentional conduct of the Defendants with respect to the tort claims he alleges.

90. Plaintiff last requests pre-judgment interest, and attorney fees and costs.

                                  **CROMER BABB PORTER & HICKS, LLC**

                          BY:    s/J. Paul Porter
                                  J. Paul Porter (# 100723)
                                  1418 Laurel Street, Ste. A
                                  Post Office Box 11675
                                  Columbia, South Carolina 29211
                                  Phone  803-799-9530
                                  Fax      803-799-9533
                       *Attorneys for Plaintiff*

January 21, 2019
Columbia, South Carolina

ELECTRONICALLY FILED - 2019 Jan 21 8:32 AM - RICHLAND - COMMON PLEAS - CASE#2019CP4000398

14

ELECTRONICALLY FILED - 2019 Feb 06 10:21 AM - RICHLAND - COMMON PLEAS - CASE#2019CP4000398

| | |
|---|---|
| STATE OF SOUTH CAROLINA<br><br>COUNTY OF RICHLAND<br><br>Jon Michael Vitale,<br><br>      Plaintiff,<br><br>v.<br><br>MiMedx Group, Inc., Parker H. Petit, and William C. Taylor.<br><br>      Defendants. | IN THE COURT OF COMMON PLEAS<br>IN THE FIFTH JUDICIAL CIRCUIT<br>CASE NO. 2019-CP-40-00398<br><br><br><br>**ACCEPTANCE OF SERVICE** |

  I, **Scott D. Stein, Esquire**, accept service of the Summons and Complaint, filed in the above captioned matter, for my client, MiMedx Group, Inc. ("MiMedx"), named defendant in this action. MiMedx has granted me the authority to accept these documents in its stead. These documents were e-mailed to me at sstein@sidley.com and are accepted by me this day, **February 5, 2019**.

  Counsel for the Plaintiff has granted my client sixty (60) days from the execution of this Acceptance of Service to answer or otherwise respond to the Complaint, and has agreed that this extension shall apply whether the case remains before this Court or is removed to Federal court.

**DATE: February 5, 2019**
**Chicago, IL**

                     /s/ Scott D. Stein
                     **Scott D. Stein, Esquire**
                     **Sidley Austin LLP**
                     **One South Dearborn St.**
                     **Chicago, Illinois 60603**
                     **Office: 312-853-7520**
                     **Fax: 312-853-7036**
                     **sstein@sidley.com**

                     *Attorney for MiMedx Group, Inc.*

ACTIVE 239626433

ELECTRONICALLY FILED - 2019 Feb 06 10:21 AM - RICHLAND - COMMON PLEAS - CASE#2019CP4000398

| | |
|---|---|
| STATE OF SOUTH CAROLINA <br><br> COUNTY OF RICHLAND <br><br> Jon Michael Vitale, <br><br>                 Plaintiff, <br><br> v. <br><br> Mimedx Group, Inc., Parker H. Petit, and William C. Taylor. <br><br>                 Defendants. | IN THE COURT OF COMMON PLEAS <br> IN THE FIFTH JUDICIAL CIRCUIT <br> CASE NO. 2019-CP-40-00398 <br><br><br> **ACCEPTANCE OF SERVICE** |

      I, **William D. Weinreb, Esquire**, accept service of the Summons and Complaint, filed in the above captioned matter, for my clients, Parker H. Petit and William C. Taylor, named defendants in this action. Messrs. Petit and Taylor have granted me the authority to accept these documents in their stead. These documents were e-mailed to me at billweinreb@quinnemanuel.com and are accepted by me this day, **February 5, 2019**.

      Counsel for the Plaintiff has granted my clients sixty (60) days from the execution of this Acceptance of Service to answer or otherwise respond to the Complaint, and has agreed that this extension shall apply whether the case remains before this Court or is removed to Federal court.

**DATE: February 5, 2019**
**Boston, Massachusetts**

                                                         **/s/ *William D. Weinreb***
                                                          **William D. Weinreb, Esquire**
                                                          **Quinn Emanuel Urquhart & Sullivan, LLP**
                                                          **111 Huntington Ave, Suite 520**
                                                          **Boston, MA 02199**
                                                          **Office: 617.712.7100**
                                                          **Fax: 617.712.7200**
                                                          **billweinreb@quinnemanuel.com**

                                                          *Attorneys for Parker. H. Petit and William C. Taylor*

08413-00014/10668851.2

ELECTRONICALLY FILED - 2019 Feb 06 10:41 AM - RICHLAND - COMMON PLEAS - CASE#2019CP4000398

| | |
|---|---|
| STATE OF SOUTH CAROLINA<br><br>COUNTY OF RICHLAND<br><br>Jon Michael Vitale,<br><br>                    Plaintiff,<br><br>v.<br><br>Mimedx Group, Inc., Parker H. Petit, and William C. Taylor.<br><br>                    Defendants. | IN THE COURT OF COMMON PLEAS<br>IN THE FIFTH JUDICIAL CIRCUIT<br>CASE NO. 2019-CP-40-00398<br><br><br><br>**ACCEPTANCE OF SERVICE** |

I, **William D. Weinreb, Esquire**, accept service of the Summons and Complaint, filed in the above captioned matter, for my clients, Parker H. Petit and William C. Taylor, named defendants in this action. Messrs. Petit and Taylor have granted me the authority to accept these documents in their stead. These documents were e-mailed to me at billweinreb@quinnemanuel.com and are accepted by me this day, **February 5, 2019**.

Counsel for the Plaintiff has granted my clients sixty (60) days from the execution of this Acceptance of Service to answer or otherwise respond to the Complaint, and has agreed that this extension shall apply whether the case remains before this Court or is removed to Federal court.

**DATE: February 5, 2019**
**Boston, Massachusetts**

                                        */s/ William D. Weinreb*
                                        **William D. Weinreb, Esquire**
                                        **Quinn Emanuel Urquhart & Sullivan, LLP**
                                        **111 Huntington Ave, Suite 520**
                                        **Boston, MA 02199**
                                        **Office: 617.712.7100**
                                        **Fax: 617.712.7200**
                                        **billweinreb@quinnemanuel.com**

                                        *Attorneys for Parker. H. Petit and William C. Taylor*

08413-00014/10668851.2