IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| JON MICHAEL VITALE,<br><br>        Plaintiff,<br><br>v.<br><br>MIMEDX GROUP, INC., PARKER H. PETIT, and WILLIAM C. TAYLOR,<br><br>        Defendants. | Case No. 19-cv-00529-RBH<br><br>**DEFENDANTS PETIT AND TAYLOR'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS** |

Defendants Parker H. Petit ("Petit") and William C. Taylor ("Taylor") respectfully submit this reply in further support of their motion to dismiss (the "Motion," ECF No. 20). As explained in the Motion and further detailed in this reply, the defamation claim asserted against them must be dismissed for lack of personal jurisdiction (under Rule 12(b)(2)) and failure to state a claim (under Rule 12(b)(6)).

Plaintiff's argument in support of personal jurisdiction fails because it ignores a crucial, undisputed fact: the challenged statements were available in South Carolina only because they were posted on the internet. Where, as here, the defendants have had no contact with South Carolina and did not *direct* the challenged statements into this state or target its readers, due process prohibits this Court from exercising jurisdiction over them, as established by binding, on-point Fourth Circuit precedent: *Young v. New Haven Advocate*, 315 F.3d 256 (4th Cir. 2002).

Plaintiff's argument that he has stated a claim fails because none of the allegedly

defamatory statements—no matter what they may "insinuate"—can reasonably be read to be about him or to allege verifiable, objective facts.

# ARGUMENT

## I.     The Complaint Must Be Dismissed for Lack of Personal Jurisdiction.

As explained in the Motion, the Court lacks personal jurisdiction over Petit and Taylor because the complaint fails to assert any credible connection between either of them and the state of South Carolina, thereby precluding general or specific jurisdiction under due process principles. (*See* Mot. at 4-11.) In his Opposition, Plaintiff concedes that he has no basis for general jurisdiction (Opp. at 7 n.4) and that his conclusory allegations regarding Petit's and Taylor's supposed connections to South Carolina have no weight in the jurisdictional analysis (Opp. at 4 n.3, 7 n.4). But Plaintiff follows these appropriate concessions with fundamentally flawed legal analysis regarding specific jurisdiction, which this Court should reject.

Plaintiff argues that Petit and Taylor "committed a tort 'in whole or in part in [South Carolina]"—thus giving rise to specific jurisdiction—because Plaintiff resides in South Carolina and was affected by the allegedly defamatory statements there. (Opp. at 7, 11; *see generally id.* at 7-13). But Plaintiff's argument ignores a key, undisputed fact that undermines the argument entirely: the statements were not published in South Carolina or directed towards South Carolina; they were available in South Carolina only because they were posted on the internet. That means the "effects test" established in *Calder v. Jones*, 465. U.S. 783 (1984), on which plaintiff stakes his entire argument (Opp. at 9), does not apply.[1]

---

[1] Taylor's only allegedly defamatory statement appears in a MiMedx press release: "[MiMedx] took employment actions against various other employees based on the degree of transgression and the openness and willingness of these employees to cooperate in the [Company's] investigation." (Compl. ¶ 63; Ex. A to the Motion at 1.). Petit's allegedly defamatory statements

The Fourth Circuit made clear in *Young* that "application of *Calder* in the Internet context requires proof that the out-of-state defendant's Internet activity is *expressly targeted at or directed to the forum state*." 315 F.3d at 262-63 (emphasis added) (citing *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir. 2002)). That is because a defendant must "purposely avail [ ] itself of the privilege of conducting activities within the forum state" to be subject to its jurisdiction. *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). If jurisdiction necessarily existed in the forum where a plaintiff experienced the "effects" of a defendant's actions, jurisdiction would depend not on the defendant's purposeful availment of that forum but "on a *plaintiff's* decision about where to establish residence." *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 626-27 (4th Cir. 1997). *Young* stands for the clear proposition that this Court cannot exercise specific jurisdiction over internet defamation claims against non-resident defendants like Petit and Taylor *unless* they acted with the "manifest intent of targeting [South Carolina] readers" through their statements. 315 F.3d at 264.[2]

---

appear in the MiMedx press release and an *Atlanta Journal Constitution* ("AJC" article) (Exhibit B to the Motion). In the MiMedx press release, he is quoted as saying:

> We have taken disciplinary action against a small number of other sales employees . . . who were found to be associated with this or similar improper acts . . . When an employee violates the duty of loyalty and contractual obligations by selling competitive products or other products, employment actions must be taken . . . we are always disappointed when individuals decide to follow self-serving financial motives rather than adhere to the high standards of conduct and compliance that we instill at [MiMedx.]

(Compl. ¶ 63; Ex. A at 1.) And in the AJC article, Petit is alleged to have "indicated in a comment to the Atlanta Journal-Constitution that an unnamed South Carolina representative was terminated a year and one-half prior was responsible for bribing Veterans Affairs officials." Compl. ¶ 64; *see also* Ex. B.)

[2] As summarized in the Motion (Mot. at 10), the Fourth Circuit in *Young* held that Connecticut-based newspapers and staff members could not be sued for defamation in Virginia even though

3

Courts in other jurisdictions have reached the same conclusion, often relying on *Young*. *See, e.g.*, *Shrader v. Biddinger*, 633 F.3d 1235, 1241 (10th Cir. 2011) ("Posting allegedly defamatory comments or information on an internet site does not, without more, subject the poster to personal jurisdiction wherever the posting could be read (and the subject of the posting may reside)."); *Lifestyle Lift Holding Co. v. Prendiville*, 768 F. Supp. 2d 929, 937-38 (E.D. Mich. 2011) (finding no jurisdiction over non-resident defendant for allegedly defamatory online statements about forum-state resident and noting, "Courts have warned . . . that the effects test should be applied with caution because the plaintiff will always feel the effects of an injury in its home state"); *Gorman v. Jacobs*, 597 F. Supp. 2d 541, 548-49 (E.D. Pa. 2009) (citing *Young* and finding no jurisdiction over non-resident defendants for allegedly defamatory online statements and noting, "[a] statement found on the Internet that simply mentions the forum state and the plaintiff's relation to it, without some other indication that the forum was the intended target of the statement, cannot suffice to establish personal jurisdiction over the statement's author"); *Dailey v. Popma*, 662 S.E.2d 12, 14 (N.C. App. 2008) ("[B]ecause plaintiff has presented no evidence suggesting that defendant, through his internet postings, manifested an intent to target and focus on North Carolina readers, the record contains no basis, under the *Young* test, for [a North Carolina court] asserting personal jurisdiction over defendant.").

Realizing that his complaint lacks a credible allegation of such "manifest intent" by Petit or Taylor, and that *Young* therefore precludes specific jurisdiction, Plaintiff tries to distinguish *Young* on its facts (s*ee* Opp. at 10-11), but he cannot. Here, as in *Young*:

---

the allegedly defamatory articles were available online in Virginia and contained allegedly defamatory statements about a Virginia prison warden, because there was no "manifest intent" to target Virginia with the articles. *See id.* at 258-59, 263-64.

4

- the forum state's long-arm statute extends personal jurisdiction to the limit permitted by due process (*Young*, 315 F.3d at 261);

- the defamatory statements were allegedly made outside the forum by non-resident defendants about a resident plaintiff's activities in the forum (*id.* at 262);

- the only alleged connection between the forum and the defendants is online publication of the defendants' statements (*id.* at 263);

- the alleged statements, viewed in context, are not focused on activity in the forum (*id.* at 264); and

- the plaintiff argues that "*Calder* requires a finding of jurisdiction simply because the [defendants'] articles … discussed the [forum plaintiff], and he would feel the effects of any libel in [the forum], where he lives and works" (*id.* at 262).

The *Young* court rejected that argument and, after granting interlocutory review, held that the district court lacked jurisdiction because the defendants "did not post materials on the internet with the manifest intent of targeting Virginia readers" (*id.* at 264). For the same reasons, personal jurisdiction is lacking here.

Plaintiff wrongly contends that *Young* applies only to defamation claims against the press. (Opp. at 11 ("*Young* probably would apply if Plaintiff were suing the *Atlanta Journal Constitution*.").) To the contrary, Courts routinely apply *Young* to defamation claims against individuals. *See, e.g.*, *Gorman*, 597 F. Supp. 2d at 547 (citing *Young* and finding no jurisdiction in case regarding individuals' allegedly defamatory statements posted online); *FireClean, LLC v. Tuohy*, 2016 WL 3952093, at *6-7 (E.D. Va., July 21 2016) (same); *Daily*, 662 S.E. 2d at 17-19 (applying *Young*'s reasoning and holding North Carolina lacked personal jurisdiction over defamation claim against Georgia defendant who posted statements online that allegedly affected

a North Carolina-resident plaintiff).  In fact, *Young*'s reasoning applies with *more* force in defamation cases like this one, where the statements at issue were made available in the forum *not* by defendants themselves, but by a third-party publisher.  *See Design Res., Inc. v. Leather Indus. of Am.*, 900 F. Supp. 2d 622, 634 (M.D.N.C. 2012) (holding North Carolina lacked jurisdiction over non-resident defendant quoted in North Carolina-based magazine because allegedly defamatory statements were made outside North Carolina during an interview with a reporter, and rejecting plaintiff's effort to "improperly conflate [the magazine's] contacts with the state of North Carolina with those of [the defendant]").  Plainly, there is even *less* basis for finding a speaker had a manifest intent to target South Carolina readers when his statements are published online by *someone else*.

In sum, there is no specific jurisdiction over Petit or Taylor for any defamation claim arising out of the statements in the MiMedx press release because those statements (i) were made in Georgia, (ii) focus on a Georgia-based company (MiMedx), (iii) contain no reference to South Carolina or any South Carolina residents, and (iv) there is no credible allegation that Petit or Taylor directed or targeted these statements at South Carolina readers.  (*See* Mot. at 8-9.)  Similarly, there is no specific jurisdiction over Petit as to claims arising out of the statements in the AJC article because those statements (i) were made in Georgia to a reporter from a Georgia-based newspaper, (ii) focus on a Georgia-based company (MiMedx), (iii) contain no reference by Petit to South Carolina or any South Carolina residents, and (v) there is no non-conclusory allegation that Petit directed or targeted his statements at South Carolina readers.  (*See* Mot. at 9-11.)  *See also Masselli*, 2000 WL 691100, at *1; *Design Res*, 900 F. Supp. 2d at 634.[3]

---

[3]  In his Opposition, Plaintiff claims that "Petit … specifically invoked 'South Carolina'" when speaking to the reporter at issue, stating, "the allegations in the indictment handed down in South

6

Furthermore, Plaintiff's purely speculative and conclusory assertions that Petit targeted statements at South Carolina do not warrant jurisdictional discovery.  *See Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 402 (4th Cir. 2003) ("When a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery."); *ALS Scan*, 293 F.3d at 716, n.3 (upholding court's refusal to allow jurisdictional discovery where plaintiff's request was based on "conclusory" assertions); *Rich v. KIS Cal., Inc.*, 121 F.R.D. 254, 259 (M.D.N.C. 1988) ("[W]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by defendants, the Court need not permit even limited discovery confined to issues of personal jurisdiction should it conclude that such discovery will be a fishing expedition."), *cited in Unspam Techs., Inc. v. Chernuk*, 716 F.3d 322, 330 (4th Cir. 2013).

## II.   Even Assuming *Arguendo* Personal Jurisdiction Exists, Plaintiff's Defamation Claim Against Petit and Taylor Must Be Dismissed for Failure to State a Claim.

As explained in the Motion, Plaintiff's defamation claim is insufficient on its face because the statements at issue (i) do not concern Plaintiff and (ii) are not statements of actual fact (and so not capable of being false).  (*See* Mot. at 12-17.)

---

Carolina this week involve the dealings of just one sales representative who MiMedx fired a year and a half ago."  (Opp. at 12-13.)  A closer look at the AJC article reveals that this language is *not* a quote from Petit himself; it is language inserted by the article's author.  Petit's *actual* quote appears later in the article and reads, "In this particular case, we terminated an employee, a sales employee, responsible for that particular facility about a year and a half ago."  (Ex. B at 4, ¶ 1.)  In that quote Petit *did not* mention South Carolina or specifically claim that a "sales representative" residing in South Carolina was the party who had been fired—indeed, as Plaintiff well-knows, there are many "sales employees" who have contact with various facilities, including representatives *and* their managers, not all of whom necessarily live in South Carolina.

7

Black-letter South Carolina law establishes that a statement *must* concern a plaintiff for him to bring a colorable defamation claim about it. (*See* Mot. at 13-14 (citing cases).) Plaintiff acknowledges this reality when listing the elements of defamation under South Carolina law and noting that the alleged statement must be "*about plaintiff*." (Opp. at 14.) Courts applying South Carolina law routinely reject defamation claims where, as here, they "[a]re not 'of and concerning'" the plaintiff. *A.E.P., III v. Charleston County School Dist.*, No. 2014-CP-10-7655, 2016 WL 8198930, at *9 (S.C. Com. Pl. Nov. 18, 2016) (emphasis added) (disposing of defamation claims because statements regarding football team were not "of and concerning" individual player-plaintiffs); *see also Outlaw v. Standard Prod. Co.*, 122 F.3d 1062 (4th Cir. 1997) (disposing of defamation claims because, among other things, they were not "of and concerning the plaintiff" as a matter of South Carolina law); *Boone v. Sunbelt Newspapers, Inc.*, 347 S.C. 571, 584 (Ct. App. 2001) (rejecting defamation claim under South Carolina law because, among other things, the article in question "could not reasonably be interpreted as stating false statements with a defamatory meaning *of and concerning* [plaintiff]") (emphasis added).

Plaintiff's claim must be dismissed because the allegedly defamatory statements do not name or otherwise identify him, meaning that no reasonable reader could conclude that they concern him, as required under South Carolina law. *See Burns v. Gardner*, 328 S.C. 608, 615 (Ct. App. 1997) (dismissing defamation claims on the pleadings where plaintiffs were not "mentioned, either by name or by implication," in the statement at issue); *see also Coleman v. Northstar Grp.*, 2013 WL 3929833, at *3 (D.S.C. July 29, 2013) ("South Carolina law requires a party claiming defamation to show that the allegedly defamatory statement made by the defendants was actually a statement made about the plaintiff.").

8

To the extent Plaintiff relies on cases holding that an "insinuation" of wrongdoing is enough to sustain a defamation claim (Opp. at 15), his reliance is misplaced. In *Eubanks*, the only "insinuation" case Plaintiff cites in this section of his brief (*id.* at 14-18), there was *no* dispute that the statements at issue were of and concerning the plaintiff; the only question was whether the statements were defamatory. Here, on the contrary, the statements at issue reference unidentified former employees and *do not* name Plaintiff or otherwise identify him as their target. Accordingly, his claim must be dismissed. (*See* Mot. at 13-15.)

Plaintiff also fails to state a claim because the statements at issue are not actionable statements of fact. In *MiMedx Grp., Inc. v. Fox*, No. 16 CV 11715, 2018 WL 558500 (N.D. Ill. Jan. 24, 2018), the court considered the very same press release at issue here and held that it was insufficiently factual to be defamatory. *Id.* at *5-6. The court explained:

> [T]he context in which the statements were made reveals that they are based solely on the subjective views of MiMedx officials. The document itself is a press release written by MiMedx; it is not a news story written by an apparently neutral party. A reasonable reader would not take the generic statements as a literal assertion of objectively verifiable fact. Further, the press release ends with a disclaimer affirming that the statements in the press release reflect the beliefs of MiMedx officials. Although a defendant cannot insulate defamatory statements merely by prefacing them with "I think" or "I believe," here, because the statements are insufficiently precise and, in context, present only the subjective views of MiMedx officials, they do not state facts about Fox and are nonactionable.

*Id.* at *6 (internal citations omitted).

Plaintiff's efforts to distinguish *Fox* are unavailing: the court made clear that *none* of the statements in the press release could fairly be deemed actionable statements of fact, *id.*, and the legal principles on which it relied are no different in South Carolina than in Illinois. And although *Fox* did not involve the AJC article, that article—like the MiMedx press release— clearly involved expressions of opinion rather than statements of fact. Petit did not name

9

Plaintiff, accuse him of anything, or make a "plain" insinuation of fact, as required by South Carolina law. *See Conway v. S.C. Vocational Rehab. Dep't*, 2018 WL 2301849, at *5 (D.S.C. Jan. 31, 2018) (quoting *Wilson v. Ward*, No. 89-MO-125, 1989 WL 380480, at *1 (S.C. Ct. App. Sept. 19, 1989) ("An insinuation is actionable only if it is false, malicious, and the meaning is plain.")); *accord Fox* at *6 ("Although a defendant cannot insulate defamatory statements merely by prefacing them with 'I think' or 'I believe,' here, because the statements are insufficiently precise and, in context, present only the subjective views of MiMedx officials, they do not state facts about Fox and are nonactionable.").

In sum, Plaintiff has provided no basis for distinguishing *Fox*, which shows that Plaintiff has failed to state a claim for defamation because the challenged statements express only vague and subjective beliefs.

(cont'd)

## **CONCLUSION**

For the reasons set forth above and in the Motion to Dismiss and Memorandum of Law in Support thereof, the Court must dismiss Plaintiff's defamation claim against Petit and Taylor for lack of personal jurisdiction under Rule 12(b)(2). Further, even assuming personal jurisdiction exists, the defamation claim must be dismissed for failure to state a claim under Rule 12(b)(6), as argued in these same filings.

Dated: May 13, 2019            /s/Beth B. Richardson
                               Beth B. Richardson
                               ROBINSON GRAY STEPP & LAFFITTE, LLC
                               1310 Gadsden Street
                               Columbia, SC  29201
                               Phone: (803) 231-7819
                               Fax: (803) 231-7861
                               brichardson@robinsongray.com

                               William D. Weinreb (*pro hac vice*)
                               Michael T. Packard (*pro hac vice*)
                               QUINN EMANUEL URQUHART & SULLIVAN, LLP
                               111 Huntington Avenue, Suite 520
                               Boston, MA 02199
                               Phone: 617.712.7100
                               Fax: 617.712.7200
                               billweinreb@quinnemanuel.com
                               michaelpackard@quinnemanuel.com

                               *Attorneys for Defendants Parker H. Petit*
                               *and William C. Taylor*

**CERTIFICATE OF SERVICE**

I hereby certify that on **May 13, 2019** I electronically filed the foregoing with the Clerk of Court via CM/ECF, which will send notification of such filing to all attorneys of record.

/s/Beth B. Richardson
Beth B. Richardson

12