IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| JON MICHAEL VITALE, ) | |
| ) | Civil Action No.: 3:19-cv-00529-RBH |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| MIMEDX GROUP, INC.; PARKER H. ) | |
| PETIT; and WILLIAM C. TAYLOR, ) | |
| ) | |
| Defendants. ) | |
| ) | |

This action is before the Court on Defendant MiMedx Group, Inc.'s ("MiMedx") motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). ECF No. 21. MiMedx's motion to dismiss seeks dismissal of Plaintiff Jon Michael Vitale's ("Vitale") complaint in its entirety as to MiMedx for failure to state a claim. *Id.* For the reasons stated below, the Court will deny MiMedx's motion to dismiss.[1]

## **Factual and Procedural Background**

This action arises from Vitale's termination from employment with MiMedx. *See generally* ECF No. 1-1 at 3-15 ("Compl."). Vitale is a resident of Richland County, South Carolina. Id. ¶ 1. MiMedx is a company registered in Florida and headquartered in Marietta, Georgia. *Id.* ¶ 2. MiMedx is in the business of selling "amniotic tissue and tissue grafts" also know as "'substitute skin'" throughout the United States, including South Carolina. *Id.* Parker H. Petit ("Petit"), who is or was the Chief Executive Officer and Chairman of the Board of MiMedx, and William C. Taylor ("Taylor"), who is or was the President, Chief Operating Officer, and a Member of the Board of MiMedx, are both residents of Georgia. *Id.* ¶¶ 3-4.

---

[1] Under the Local Rules in this District: "[h]earings on motions may be ordered by the court in its discretion. Unless so ordered, motions may be determined without a hearing." Local Civ. Rule 7.08 (D.S.C.). Having reviewed the briefs of the parties and the applicable law, the Court finds a hearing is unnecessary to decide the instant motion to dismiss.

On January 27, 2014, MiMedx hired Vitale as an account executive. *Id.* ¶ 9. In that position, Vitale was responsible for placing, billing, and selling MiMedx products to healthcare providers, including Dorn Veterans Affairs Hospital ("Dorn") in Columbia, South Carolina. *Id.* ¶¶ 10, 20-21. Vitale was successful in his sales role with MiMedx prior to his termination, consistently meeting or exceeding expectations, and had only one disciplinary incident during that time, which is unrelated to the events at issue here. *Id.* ¶¶ 13-17. Vitale was paid through a combination of base pay and commissions. *Id.* ¶ 11.

The allegations at the root of this case concern channel stuffing. "Channel stuffing, put simply, occurs when MiMedx sends a larger quantity of product than purchased to a purchaser to create the appearance of higher level sales to investors." *Id.* ¶ 18 Vitale alleges MiMedx is currently under investigation for, and subject to lawsuits based upon, channel stuffing. *Id.* Vitale further avers MiMedx is subject to a lawsuit by employees retaliated against for reporting channel stuffing. *Id.* ¶ 19.

One place where Vitale alleges MiMedx channel stuffed is Dorn. *Id.* ¶ 22. In about May, 2016, Dorn's new Assistant Chief of Prosthetics informed Vitale Dorn could no longer hold MiMedx products on consignment (the allegedly "channel stuffed" items) without a consignment agreement; at the time, Dorn was holding approximately $400,000 worth of said product. *Id.* ¶¶ 23-26.

Vitale sought MiMedx's guidance regarding what to do with the product. *Id.* ¶ 27. MiMedx initially said it did not care, but then told Vitale he could not ship the product back to MiMedx until further notice. *Id.* ¶ 28. Vitale claims MiMedx did not want him to return the product to MiMedx because it would have counted against MiMedx's quarterly earnings. *Id.* ¶ 29. Vitale further alleges the Dorn Assistant Chief of Prosthetic's stance that Dorn could no longer hold MiMedx items on consignment would have affected other MiMedx accounts, such that if MiMedx had not channel

2

stuffed, it would have had to disclose to investors it had missed its upper end sales guidance for the quarter. *Id.* Vitale avers MiMedx first told him to "'hide'" the product at Dorn; Vitale refused. *Id.* ¶ 30. MiMedx next directed Vitale to store the product at his home, which was inappropriate because as a medical-grade product, it should be stored in a controlled environment. *Id.* ¶¶ 30-31. In November, 2016, MiMedx directed Vitale to ship the product back to it, and told Vitale he could use MiMedx's FedEx account for the shipping; shipping by FedEx was MiMedx's preference, but not a requirement *Id.* ¶¶ 32-33, 36. During the course of his employment with MiMedx, Vitale had frequently used UPS, which was more convenient to his home, to ship items to MiMedx, had never had any issues with delivery, and was never told not to use UPS. *Id.* ¶¶ 34-35.

Vitale states he shipped the product to MiMedx via UPS on November 30, 2016. *Id.* ¶¶ 37. MiMedx claimed it had not received the shipment, and asked Vitale to file a loss of shipment claim against the delivery insurance. *Id.* ¶ 40. Vitale claims MiMedx's request to file a loss of shipment claim was in lieu of MiMedx properly reporting the returned product as a lost sale. *Id.*

Vitale investigated the status of the delivery, and determined it had been delivered to MiMedx and signed for by a MiMedx employee on December 2, 2016. *Id.* ¶¶ 38, 42. Vitale then asked MiMedx about the package's status via email, telephone, and text message, and received responses including that MiMedx did not receive packages on the loading dock, which it had done throughout Vitale's tenure, and that the employee who had signed for the package did not work for MiMedx, despite the employee signing for both earlier and later sent packages. *Id.* ¶¶ 42-45. On December 13, 2016, while emailing regarding the purportedly lost package and the directive to file a loss of shipment claim, Vitale received a call from a higher-up employee at MiMedx, who informed him MiMedx's Executive Vice President of Compliance "'said if you send one more f***ing email you will be fired.'"

3

Following MiMedx's directions, on December 15, 2016, Vitale filed a lost product claim with UPS for product valued at approximately $352,000. *Id.* ¶ 47. On the claim form, Vitale indicated "'I am the shipper & I believe Mi[M]edx is attempting insurance fraud.'" *Id.*[2]

On December 20, 2016, MiMedx's Vice President of Sales called Vitale and asked him about whether he was employed by, promoted the products of, or received compensation from, a competitor while working for MiMedx, or if he knew of other MiMedx employees who promoted competitor's products. *Id.* ¶¶ 48(a)-(c). Vitale truthfully said no to these questions as to himself, and stated he would not discuss other employees. *Id.* Vitale was also asked if he knew of a company which provides medical-grade gauze and tape to low-income patients; Vitale did not fully answer the question because he feared MiMedx was creating pretext to fire him after he raised concerns about insurance and investor fraud. *Id.* ¶ 48(d). Vitale was not disciplined or counseled following the phone call. *Id.* ¶ 49.

On December 29, 2016, Vitale met with an attorney concerning his worry that MiMedx was building pretext to fire him. *Id.* ¶ 50. MiMedx had tracking software on Vitale's phone, and could track his location. *Id.* ¶ 51. While Vitale met with the attorney, MiMedx wiped relevant information from Vitale's phone and computer. *Id.* ¶ 52.

Hours after Vitale met with the attorney, MiMedx's Vice President of Sales called Vitale to tell him he was fired. *Id.* ¶ 53. Vitale requested a reason for his termination; ultimately, the Vice President of Sales told Vitale he was being fired for sending the product to MiMedx via UPS rather than FedEx and for lying during their earlier phone call. *Id.* ¶ 54. Vitale stated he had not competed with MiMedx. *Id.* The Vice President of Sales then informed Vitale that because he was being terminated on December 29, 2016 (one day before the last work day of the month), he would not receive his

---

[2] Vitale indicates this claim form is attached to his complaint. Compl. ¶ 47 ("Exhibit 2: Claim Form). However, no such claim form is attached to the complaint.

4

November and December commissions. *Id.* ¶ 55. Vitale avers he lost more than $20,000 in commissions. *Id.* ¶ 56.

Vitale claims the day after his termination, in a MiMedx press release regarding MiMedx employees sued for competing with MiMedx, Petit and Taylor made defamatory statements about Vitale. *Id.* ¶¶ 62-63; ECF No. 21-3 at 2-4[3]. Specifically, Taylor said MiMedx "'took employment actions with various other employees based on the degree of transgression and the openness and willingness of these employees to cooperate in [MiMedx's] investigation.'" ECF No. 21-3 at 2. Petit stated:

> '[W]e have taken disciplinary action against a small number of other individuals in our sales organization who were also found to be associated with this or other similar improper acts. . . . [W]hen an employee violates the duty of loyalty and contractual obligations by selling competitive products or other products, employment actions must be taken. . . . we are always disappointed when individuals decide to follow self-serving financial motives rather than adhere to high standards of conduct and compliance that we foster and instill at [MiMedx].'

ECF No. 20-1 at 2.[4]

Vitale alleges in May, 2018, Petit made a statement published in the Atlanta Journal-

---

[3] ECF No. 21-3 are the press release and the article in which Vitale claims he was defamed. Vitale did not attach these documents to his complaint. While courts deciding a motion under Fed. R. Civ. P. 12(b)(6) principally consider the allegations in the complaint, they may also consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned" in deciding such motions. 5B Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1357 (3rd ed. 2004); *see, e.g., Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."). Here, the press release and article are the basis for Vitale's defamation claim, *see* Compl. ¶¶ 62-65, 73-78, and are thus integral to the complaint, and Vitale indicates he agrees with the Court considering the article and press release in deciding MiMedx's motion to dismiss, ECF No. 24 at 9. Accordingly, the Court will consider the article and press release in deciding the instant motion.

[4] ECF No. 20-1 at 2-3 and ECF No. 21-3 at 2-4 are the same press release, filed respectively by Petit and Taylor and MiMedx in motions to dismiss before this Court. *Compare* ECF No. 20-1 at 2-3 *with* ECF No. 21-3 at 2-4. Part of the text in the press release filed with the MiMedx motion to dismiss, ECF No. 21-3 at 2-3, was cut off. Accordingly, the Court takes judicial notice of the same press release filed with Petit and Taylor's motion to dismiss, and cites to that document in this instance to simplify the citation.

5

Constitution in which he indicated a South Carolina MiMedx representative who had bribed Veterans Affairs's officials had been terminated by MiMedx some one and a half years prior. Compl. ¶ 64. The article at issue concerns workers at Veterans Affairs's facilities in Greenville and Columbia, South Carolina accepting gifts in return for pushing the use of MiMedx products and thereby purportedly committing - and being indicted for - conspiring to defraud the United States government, participating in federal acts in which they had a financial interest, and accepting bribes. ECF No. 21-3 at 5-14. The article states: "[Petit] says the allegations in the indictment handed down in South Carolina this week involved the dealings of just one sales representative who MiMedx fired a year and a half ago." ECF No. 21-3 at 6. The article later says: "Petit declined to name the sales rep who worked with the South Carolina workers[;]" Petit is quoted as saying: "'[i]n this particular case, we terminated an employee, a sales employee, responsible for that particular facility about a year and a half ago.'" *Id.* at 9. Vitale states he never bribed Veterans Affairs's officials, but is the only South Carolina MiMedx representative who was terminated during the relevant period. Compl. ¶ 64.

On January 21, 2019, Vitale filed suit against MiMedx, Petit, and Taylor in the Court of Common Pleas for Richland County, South Carolina. Compl. Vitale's complaint brought claims for: (1) wrongful discharge in violation of public policy against MiMedx; (2) defamation against all Defendants; and (3) unjust enrichment against MiMedx. *Id.* On February 19, 2019, Defendants removed to this Court. ECF No. 1.

On April 8, 2019, MiMedx filed a motion to dismiss Vitale's complaint in its entirety as to MiMedx pursuant to Fed. R. Civ. P. 12(b)(6). ECF No. 21. Vitale responded, ECF No. 24, and MiMedx replied, ECF No. 31. Accordingly, this matter is now ripe for decision before the Court.

**<u>Legal Standards</u>**

"A motion filed under Rule 12(b)(6) challenges the legal sufficiency of a complaint . . . considered with the assumption that the facts alleged are true[.]" *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted). The Court measures legal sufficiency by determining whether the complaint meets the Rule 8 standards for a pleading. *Id.* Rule 8 requires, in pertinent part, that a claim for relief contain a "statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). "Each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

When reviewing a motion under Rule 12(b)(6), the Court must "accept[] all well-pleaded allegations in the plaintiff's complaint as true and draw[] all reasonable factual inferences from those facts in the plaintiff's favor[.]" *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). However, the Court need not accept as true allegations that are contradicted by exhibits to the complaint. *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (citation omitted). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563. A complaint need not assert "detailed factual allegations[;]" however, it must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" will not suffice. *Id.* at 555 (citations omitted). Furthermore, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim has "facial plausibility" where the pleading "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

**Discussion**

MiMedx asserts all three of Vitale's causes of action as to MiMedx fail to state a claim under Fed. R. Civ. P. 12(b)(6); MiMedx thus asks the Court to dismiss Vitale's claims against it with prejudice. ECF No. 21. MiMedx argues Vitale's wrongful discharge cause of action fails because: (1) Vitale's allegations do not fit within the public policy exceptions to South Carolina's at-will employment doctrine; (2) his claims are barred by statute; (3) his allegations of discharge based upon insurance fraud fail because there was no insurance claim, and Vitale did not report the purported fraud to a government agency; and (4) South Carolina does not recognize a policy right to consult with an attorney. ECF Nos. 21-1 at 7-15; 31 at 5-9. MiMedx advances Vitale's defamation allegations fail to state a claim because (1) the press release and article were not about Vitale; and (2) at least one of the statements was true.[5] ECF Nos. 21-1 at 17-19; 31 at 9-10. Finally, MiMedx claims Vitale's unjust enrichment cause of action is barred because Vitale's compensation was subject to a written contract in the form of a commission plan and offer letter. ECF Nos. 21-1 at 19-20; 31 at 10-11.

In response, Vitale argues he has sufficiently pled his claims to withstand MiMedx's motion to dismiss. ECF No. 24. Vitale advances MiMedx relies upon outdated wrongful discharge law, and his wrongful discharge claim falls within the public policy exception to at-will employment, is not barred by not reporting his underlying claims to a government agency, and should not be dismissed at this stage of the proceedings. *Id.* at 9-23. Vitale avers he sufficiently pled the defamatory statements were about him to survive MiMedx's motion to dismiss. *Id.* at 23-24, 26-30. Finally, Vitale argues

---

[5] MiMedx also avers Vitale's defamation claim fails because his termination was not published to any third-party. ECF No. 21-1 at 16-17. Vitale, however, indicates that his claim is not that his firing was defamatory, but that his firing on false pretenses followed by the defamatory statements made about him in the press release and article were defamation, and that he sufficiently alleged these statements were published to third parties. ECF No. 24 at 24-26. The Court agrees with Vitale, and thus declines to further address this argument by MiMedx. *See* Compl. ¶ 74 ("Defendants defamed and slandered Plaintiff by terminating him on false grounds and then falsely stating or insinuating in at least two separate media publications that Plaintiff was terminated for actions that amount to criminal misconduct and professional unfitness.")

8

his unjust enrichment claim should survive because it is unclear whether the offer letter and commission plan are enforceable contracts that would bar his unjust enrichment cause of action. *Id.* at 30-33.

The Court will discuss each of Vitale's causes of action in turn. Before analyzing those causes of action, however, the Court first addresses the three exhibits MiMedx attaches to its motion to dismiss, ECF Nos. 21-2, 21-3, 21-4. The first exhibit is: (1) MiMedx's letter offering Vitale employment and laying out the terms of said employment and compensation; and (2) MiMedx's 2016 commission plan, an earlier version of which is referenced in its offer letter. ECF No. 21-2. The second exhibit is the press release and newspaper article in which Vitale alleges he was defamed. ECF No. 21-3. The final exhibit is an affidavit from a third-party indicating his company mistakenly received a box containing MiMedx tissues (presumably the box Vitale shipped to MiMedx) in December, 2016. ECF No. 21-4. The affiant states his company kept the box onsite for approximately four months, and only reached out to MiMedx regarding the misdirected shipment in April, 2017, at which time MiMedx provided a FedEx shipping label so the package could be returned to MiMedx, which a MiMedx representative confirmed in mid-April, 2017 had happened. *Id.*

The Court has already discussed the press release and the article, which it will consider in deciding MiMedx's motion to dismiss. *Supra* n.3. Unlike the press release and the article which Vitale consents to the Court considering, Vitale objects to the Court considering the offer letter, commission plan, and affidavit because they have not been authenticated and are not relied upon in the Complaint. ECF No. 24 at 9, 20-21, 32 n.9. The Court agrees with Vitale: it would be inappropriate for the Court to consider the offer letter, commission plan, and affidavit in deciding the instant motion. *See* Wright & Miller, § 1357 (indicating courts deciding a 12(b)(6) motion may consider exhibits integral to the

9

complaint and those whose authenticity is unchallenged). Accordingly, the Court will not consider the offer letter, commission plan, and affidavit in deciding MiMedx's motion to dismiss.

I. **Wrongful Discharge in Violation of Public Policy**

Under South Carolina law, employment is presumed to be at-will. *Barron v. Labor Finders of South Carolina*, 713 S.E.2d 634, 636 (S.C. 2011). An employer may terminate an at-will employee for any reason, for no reason at all, with cause, or without cause. *Id.* In limited situations, the termination of an at-will employee provides the basis for a wrongful discharge action. *Small v. Springs Indus., Inc.*, 388 S.E.2d 808, 810 (S.C. 1990).

South Carolina allows an action for wrongful discharge in violation of public policy. *Ludwick v. This Minute of Carolina, Inc.*, 337 S.E.2d 213, 216 (S.C. 1985). South Carolina's public policy exception applies where: (1) the employer requires the employee to violate the law to maintain employment, *id*; or (2) the reason for the discharge itself violates criminal law, *Culler v. Blue Ridge Elec. Co-op., Inc.*, 422 S.E.2d 91, 93 (S.C. 1992). The Supreme Court of South Carolina has indicated, however, that the public policy exception is not specifically limited to those two situations. *Barron*, 713 S.E.2d at 637.

Taken in the light most favorable to Vitale, Vitale alleges he was asked to hide and/or improperly store MiMedx's product in order to cover up alleged channel stuffing, so MiMedx could report more favorable numbers to investors. Compl. Vitale further advances he was directed to return the product to MiMedx and then file a fraudulent insurance claim when the package appeared to have been delivered. *Id.* Vitale avers he was terminated for refusing to violate the law in relation to product storage and insurance fraud to cover up investor fraud. *Id.* Vitale indicates his firing implicates public policies including:

> a) Federal and State laws and regulations having to do with channel stuffing and the waste or misuse of public monies[;]
> b) The public policies outlined in the [South Carolina] Insurance Fraud and Reporting Immunity Act . . . ;
> c) Federal and State laws and regulations having to do with transparent disclosure of income to investors[;]
> d) Federal and State law and regulations having to do with a person's right to consult legal counsel[; and]
> e) Federal and State laws and regulations having to do with the proper storage of MiMedx's product.

*Id.* ¶ 67.

MiMedx first argues Vitale's claims do not fit within South Carolina's public policy exception because they do not fall under *Ludwick* or *Culler*. ECF Nos. 21-1 at 7-9; 31 at 7-9. That argument is unavailing. As noted above, South Carolina's public policy exception is not explicitly limited to the grounds provided in *Ludwick* and *Culler*. *Barron*, 713 S.E.2d at 637. Even assuming the public policy exception were so limited, Vitale alleges in part MiMedx directed him to violate the law by helping it defraud investors, incorrectly store medical-grade products, and commit insurance fraud. These allegations would properly fit under even a limited version of South Carolina's public policy exception.

MiMedx next advances Vitale's claims based upon investor fraud or channel stuffing are barred because the Sarbanes Oxley Act provides a statutory remedy for his claims, and he is thus barred from bringing a public policy discharge claim. ECF No. 21-1 at 11-12. This argument also fails.

A plaintiff is barred from bringing a wrongful discharge action under the public policy exception when the statute he claims is implicated in his discharge creates a right and provides a remedy for violation of that right. *See Dockins v. Ingles Markets, Inc.*, 413 S.E. 2d 18, 19 (S.C. 1992) ("When a statute creates a substantive right and provides a remedy for infringement of that right, the plaintiff is limited to that statutory remedy."). Further, the Sarbanes Oxley Act creates a substantive right for employees to participate in certain types of whistleblowing related to securities and

11

shareholder fraud without being discharged from employment, and provides a remedy for such discharge. 18 U.S.C. § 1514A.

While Vitale avers his case is not about securities fraud, but about insurance fraud committed to cover up securities fraud, ECF No. 24 at 15, he alleges in his complaint that he was terminated for - *inter alia* - questioning MiMedx's attempted insurance fraud and investor fraud, Compl. ¶ 60, and that one set of public policies implicated in his termination was: "Federal and State laws and regulations having to do with transparent disclosure of income to investors[,]" *id.* ¶ 67(c). Assuming without deciding Sarbanes Oxley applies to bar some of Vitale's claims, as noted above, Vitale alleges other public policy bases for his discharge claim, and thus - at this juncture - his claim would not be due to be dismissed.

MiMedx next argues Vitale's public policy claim based upon insurance fraud fails because the UPS form was not an insurance claim, and Vitale did not report the alleged fraud to an agency. ECF No. 21-1 at 12-14. MiMedx further advances that there was no insurance fraud and Vitale's belief that there was is unavailing in making a public policy discharge claim. ECF No. 31 at 7-9. Vitale counters that his insurance fraud-based claim is sufficiently stated at this stage in the proceedings. ECF No. 24 at 16-22. The Court agrees with Vitale.

As a preliminary matter, having not seen the UPS form or any related documents, the Court is unable to state as a matter of law that the UPS form was not an insurance claim. Further, while MiMedx avers there was no insurance fraud, presumably based upon the affidavit of the third-party who purportedly received the package Vitale shipped to MiMedx, as noted above, the Court will not consider that affidavit in deciding the instant motion. Accordingly, the Court is unable to say at this juncture that there was no insurance fraud.

12

South Carolina's Omnibus Insurance Fraud and Reporting Immunity Act ("the Act"), S.C. Code Ann. §§ 38-55-510 *et seq.*, aims to "confront aggressively" insurance fraud in South Carolina by - *inter alia* - providing for reporting of suspected fraud and providing immunity to those who report suspected fraud, *id.* § 38-55-520. Vitale avers he reported suspected fraud by noting it on the UPS claims form. The Court notes the Act specifically confers immunity upon those who report suspected fraud to an "authorized agency," and there is no allegation Vitale reported the fraud to an authorized agency. S.C. Code Ann. § 38-55-580(A); *see also id.* § 38-55-530 (defining authorized agency). However, the Court also notes the parties do not cite to - and it is unable to find - any cases in South Carolina directly on point. Further, courts in other jurisdictions have held that there may be an action for public policy discharge for refusing to engage in insurance fraud even where there has been no reporting of said fraud to a government agency. *Fenner v. Hartford Courant Co.*, 822 A.2d 982, 985-989 (Conn. App. Ct. 2003); *Flores v. Am. Pharm. Servs., Inc.*, 994 P.2d 455, 459 (Colo. App. 1999); *Anders v. Specialty Chem. Res.*, 700 N.E.2d 39, 43-47 (Ohio Ct. App. 1997). Finally, because the issue of whether an employee's discharge for refusing to violate the Act falls within South Carolina's public policy discharge is a novel issue, the Court holds it would be premature to decide this claim at the Rule 12 stage. *See Keiger v. Citgo, Coastal Petroleum, Inc.*, 482 S.E.2d 792, 794 (S.C. Ct. App. 197) (reversing the lower court's grant of a 12(b)(6) motion on a wrongful discharge against public policy claim because the question of whether the allegations fit within South Carolina's public policy exception was "a novel issue."); *Garner v. Morrison Knudsen Corp.*, 456 S.E.2d 907, 909-10 (S.C. 1995) (same).

Finally, MiMedx advances Vitale's public policy discharge cause of action fails because South Carolina does not recognize a right to consult with an attorney. ECF Nos. 21-1 at 14-15; 31 at 8-9.

Vitale responds this right is supported by the South Carolina Constitution and case law from other jurisdictions. ECF No. 24 at 17-22. Because, as analyzed above, the Court holds Vitale has stated a sufficient claim for public policy discharge to survive MiMedx's motion to dismiss, the Court will decline to further address MiMedx's argument as to the right to consult an attorney. *See Karsten v. Kaiser Found. Health Plan of Mid-Atl. States, Inc.*, 36 F.3d 8, 11 (4th Cir. 1994) ("If the first reason given is independently sufficient, then all those that follow are surplusage; thus, the strength of the first makes all the rest *dicta*."). For the foregoing reasons, the Court will deny MiMedx's motion to dismiss as to Vitale's wrongful discharge cause of action.

## II. **Defamation**

MiMedx advances Vitale's defamation cause of action as to MiMedx fails to state a claim because the press release and article were not about Vitale and even if the article was about him, it was true. ECF Nos. 21-1 at 17-19; 31 at 9-10. Vitale responds he has sufficiently pled defamation to withstand MiMedx's motion to dismiss. ECF No. 24 at 26-30. The Court agrees with Vitale.

To state a cause of action for defamation under South Carolina law, a plaintiff must show: (1) there was a false statement about the plaintiff; (2) which was published to a third party; (3) the publisher was at fault; and (4) the statement was actionable without harm or there was special harm from the publication. *Fleming v. Rose*, 567 S.E.2d 857, 860 (S.C. 2002). Defamation need not be direct. *Eubanks v. Smith*, 354 S.E.2d 898, 901 (S.C. 1987). "A mere insinuation is actionable as a positive assertion if it is false and malicious and its meaning is plain." *Id.* For a defamatory statement to be about the plaintiff, the person hearing it must be able to understand that the plaintiff was the person being defamed. *Neeley v. Winn-Dixie Greenville, Inc.* 178 S.E. 2d 662, 665 (1971).

Taken in the light most favorable to Vitale, he alleges the press release, which was issued the

day after he was terminated, defamed him as engaging in improper behavior for an employee by implying he engaged in improper actions in relation to his employment. Vitale further alleges the article implies he was terminated for bribing Veterans Affairs's officials. While neither the press release nor the article names Vitale specifically, given the timing of the press release and the fact Vitale alleges he is the only South Carolina MiMedx employee terminated during the relevant time period, a reader might understand the statements as referring to Vitale. Vitale also avers he did not engage in bribery or other improper acts, so to the extent the statements refer to him, they would be false. MiMedx has not challenged the remaining elements of defamation, and having reviewed Vitale's allegations, the Court finds he has sufficiently pled his defamation cause of action. Accordingly, the Court will deny MiMedx's motion to dismiss as to Vitale's defamation claim against it.

### III. Unjust Enrichment

MiMedx avers the payment of Vitale's commissions was controlled by a written contract: the offer letter and commission plan; because a written contract controls, MiMedx advances Vitale may not bring his unjust enrichment cause of action. ECF Nos. 21-1 at 19-20; 31 at 10-11. Vitale objects to the Court considering the commission plan and offer letter in deciding the instant motion, and argues it is impossible to say as a matter of law that the offer letter and commission plan constitute an enforceable contract. ECF No. 24 at 9, 30-33.

To bring a claim for unjust enrichment, a plaintiff must show: (1) he conferred a benefit upon the defendant; (2) the defendant realized that benefit; and (3) it would be unfair for the defendant to retain the benefit without paying plaintiff. *See Myrtle Beach Hosp., Inc. v. City of Myrtle Beach*, 532 S.E.2d 868, 872 (S.C. 2000) (providing elements of a quantum meruit action); *see also JASDIP Props. SC, LLC, v. Estate of Richardson*, 720 S.E.2d 485, 488-89 (S.C. Ct. App. 2000) (quoting *Gignilliat v.*

*Gigniliiat, Savitz & Bettis, L.L.P.*, 684 S.E.2d 756, 764 (S.C. 2009)) ("'quantum meruit [is] an equitable doctrine to allow recovery for unjust enrichment.'"). An unjust enrichment action will not lie where there is a valid express contract covering the subject which forms the basis of the unjust enrichment claim. *Swanson v. Stratos*, 564 S.E.2d 117, 120 (S.C. Ct. App. 2002).

Vitale here alleges he performed his work, was entitled to commissions, and MiMedx failed to pay him his November and December, 2016 commissions. As noted previously, the Court declines to review the offer letter and commission plan in deciding MiMedx's motion to dismiss. Accordingly, the Court is unable to say as a matter of law at this juncture that Vitale's entitlement to commissions was governed by a valid, express contract. For this reason, the Court will deny MiMedx's motion to dismiss on Vitale's unjust enrichment claim.

In summary, Vitale's claims are sufficient to survive MiMedx's motion to dismiss Vitale's claims against it pursuant to Fed. R. Civ. P. 12(b)(6). *See Twombly*, 550 U.S. at 556 (indicating that the standard in a 12(b)(6) motion is plausibility of the claim, not probability of success on the merits). Accordingly, the Court will deny MiMedx's motion to dismiss.

## Conclusion

For the foregoing reasons, the Court **DENIES** MiMedx's motion to dismiss, ECF No. 21.

**IT IS SO ORDERED.**

Florence, South Carolina  
August 6, 2019

s/ R. Bryan Harwell  
R. Bryan Harwell  
Chief United States District Judge