**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | |
|---|---|
| Jon Michael Vitale, | C/A No.: 3:19-cv-00529-RBH |
| Plaintiff, | |
| v. | **PLAINTIFF'S RESPONSES TO LOCAL RULE 26.03 INTERROGATORIES** |
| MiMedx Group, Inc., Parker H. Petit, and William C. Taylor, | |
| Defendants. | |

In compliance with Local Rule 26.03 DSC, counsel for the Plaintiff submits the following information:

**(1)    A short statement of the facts:**

**RESPONSE:**

This is an employment case that alleges wrongful discharge and unjust enrichment against Defendant MiMedx Group, Inc, and defamation/slander against all defendants arising under the Common Law of South Carolina. Plaintiff alleges that he was unlawfully terminated because: he reported suspected insurance fraud that was carried out for the purpose of concealing information to investors; MiMedx realized he met with an attorney about the above; and because he questioned a directive to store medical-grade substitute skin in his home. Plaintiff alleges he was defamed by a press release the day after his termination indicating that he had been fired for competing with MiMedx or other similar actions of disloyalty. Plaintiff alleges he was next defamed by a quote attributed to Defendant MiMedx's CEO, Defendant Petit, in the Atlanta Journal Constitution suggesting that Plaintiff was terminated due to involvement in a scheme to bribe federal employees. Plaintiff also alleges that Defendant MiMedx terminated him on December 29, 2016

1

particularly to deprive him of earned, but unpaid commissions, that would have been due at the end of the month.

**(2)  The names of fact witnesses likely to be called by the party and a brief summary of their expected testimony.**

**RESPONSE:**

1. Jon Michael Vitale, Plaintiff, is expected to testify as to all aspects of his case.

2. Parker H. Petit, Defendant, will be called upon to testify as to his knowledge of the circumstances surrounding the events of this matter and his actions taken against the Plaintiff.

3. William C. Taylor, Defendant, will be called upon to testify as to his knowledge of the circumstances surrounding the events of this matter and his actions taken against the Plaintiff.

4. Lee Ann Lawson, VP of Defendant HR, may be called upon to testify as to her knowledge of the circumstances surrounding the events of this matter and the actions taken against the Plaintiff.

5. Clay Jones, Dorn VA Assistant Chief, may be called upon to testify as to his knowledge of the circumstances surrounding the events of this matter and specifically his directives regarding "consignment product" at the Dorn VA.

6. Deborah Dean, Defendant's Executive VP of Compliance, may be called upon to testify as to her knowledge of the circumstances surrounding the events of this matter and actions taken against the Plaintiff. Specifically, she may be called to answer to a threatening message relayed to Plaintiff from her via telephone prior to Plaintiff's termination.

7. Chris Cashman, Defendant VP of Sales, may be called upon to testify as to his knowledge of the circumstances surrounding the events of this matter and actions taken against the

Plaintiff. Particularly, he may be called on to discuss Plaintiff's internal complaints and concerns raised and MiMedx responses to the same.

8. Shawn DeFord, Defendant Regional Sales Director, may be called upon to testify as to his knowledge of the circumstances surrounding the events of this matter and actions taken against the Plaintiff.

9. Jana Cagle, Defendant Senior Account Coordinator, may be called upon to testify as to her knowledge of the circumstances surrounding the events of this matter and actions taken against the Plaintiff.

10. Jeff Spruiell, Defendant Employee, may be called upon to testify as to his knowledge of the circumstances surrounding the events of this matter and actions taken against the Plaintiff.

11. Delonte Ryan, Defendant Employee, may be called upon to testify as to his knowledge of the circumstances surrounding the events of this matter and actions taken against the Plaintiff.

12. All individuals whose identities designated as confidential listed by Defendants Taylor and Petit in their responses to Plaintiff's jurisdictional discovery requests.

13. Andrea Blum, Defendant Employee, may be called on to testify to her involvement in the lost shipment issue described in the complaint.

14. Dan Lane, Defendant Employee, may be called upon to testify as to his knowledge of the lost shipment issue described in the Complaint.

15. Scott Turner, Defendant Employee, may be called on to testify to his involvement in the lost shipment issue described in the complaint.

16. Teresa Elrod, Defendant Employee, may be called on to testify to her involvement in the lost shipment issue described in the Complaint.

17. Jeff Garrett, Defendant Employee, may be called on to testify to his involvement in the lost shipment issue described in the complaint.

18. Maryam Dugar, UPS Store Manager in Columbia, SC, may be called on to testify to her knowledge of the lost shipment issue described in the Complaint.

19. Marc Cohodes, former Defendant Employee, may be called on to testify to his placing Defendant Petit on notice of channel stuffing at MiMedx.

20. Lou Roselli, Defendant Employee, may be called on to testify to his involvement in matters tangential to channel stuffing.

21. Kevin Lilly, Defendant Employee, may be called on to testify to his knowledge about and involvement in the Plaintiff's termination.

22. Thorton A. Kuntz, Jr. Defendant Employee, may be called on to testify to his knowledge about and involvement in the Plaintiff's termination.

23. Lexi Haden, Defendant Employee, may be called on to testify to non-privileged components of her involvement in Plaintiff's termination.

24. Jeff Kruchoski, former employee, may be called on to testify to his whistleblowing.

25. Luke Tornquist, former employee, may be called on to testify to his whistleblowing.

26. Mike Fox, former employee, may be called on to testify to his whistleblowing.

27. Brian Sizemore, of North Carolina, may be called on to testify to the contents of his affidavit.

28. Plaintiff reserves the right to identify additional witnesses during the discovery process and to call upon any witnesses identified by any party in their Local Rule 26.03 Interrogatory responses or discovery responses thereafter.

**(3)** **The names and subject matter of expert witnesses (if no witnesses have been identified, the subject matter and field of expertise should be given as to experts likely to be offered).**

**RESPONSE:** None at this time.

**(4)** **A summary of the claims with statutory and/or case citations supporting the same.**

**RESPONSE:**

**Wrongful Discharge in Violation of Public Policy**

Plaintiff alleges a claim of public policy discharge. A discharge violates public policy in South Carolina where an employee is (1) required to violate the law, (2) terminated in a way that violates the law or (3) is terminated in violation of a clear mandate of public policy. "Under the "public policy exception" to the at-will employment doctrine [] an at-will employee has a cause of action in tort for wrongful termination where there is a retaliatory termination of the at-will employee in violation of a clear mandate of public policy. *Barron v. Labor Finders of S.C.*, 393 S.C. 609, 614, 713 S.E.2d 634, 636–37 (2011); *citing*, *Ludwick v. This Minute of Carolina, Inc.,* 287 S.C. 219, 337 S.E.2d 213 (1985). "The public policy exception clearly applies in cases where either: (1) the employer requires the employee to violate the law*,* [] or (2) the reason for the employee's termination itself is a violation of criminal law. *Barron*, 393 S.C. at 614; *Culler v. Blue Ridge Elec. Co-op., Inc.,* 309 S.C. 243, 422 S.E.2d 91 (1992) (employee was terminated after he refused to contribute to political action fund, and his termination violated S.C. Code Ann. § 16–17–560). "In this state, an at-will employee has a cause of action for wrongful termination where there is a retaliatory termination of the at-will employee in violation of a clear mandate

5

of public policy. *Barron*, 393 S.C., 616-17. "The determination of what constitutes public policy is a question of law for the courts to decide." *Id. citing*, *Citizens' Bank v. Heyward,* 135 S.C. 190, 133 S.E. 709, 713 (1925) ("The primary source of the declaration of public policy of the state is the General Assembly; the courts assume this prerogative only in the absence of legislative declaration.").

**Unjust Enrichment**

"Quantum meruit, quasi-contract, and implied by law contract are equivalent terms for an equitable remedy." Myrtle Beach Hosp. v City of Myrtle Beach, 341 S.C. 8, 532 S.E.2d 872 (2000). To maintain an action for recovery based on unjust enrichment through quantum meruit, quasi-contract, or contract implied by law a plaintiff must satisfy three elements: (1) benefit conferred upon the defendant by the plaintiff; (2) realization of that benefit by the defendant; (3) retention by the defendant of the benefit under conditions that make it unjust to retain it without paying its value. Myrtle Beach Hosp. v City of Myrtle Beach, 341 S.C. 8-9, 532 S.E.2d 872 (2000).

**Defamation**

Plaintiff's alleges a claim of defamation;

> The elements of defamation include: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault on the part of the publisher; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

*Murray v. Holnam, Inc.*, 344 S.C. 129, 139, 542 S.E.2d 743, 748 (Ct. App. 2001). Defamation "allows a plaintiff to recover for injury to his or her reputation as the result of the defendant's communications to others of a false message about the plaintiff." *Id*. Communications are defamatory if they impeach the honesty, integrity, virtue, or reputation of an individual. *Castine v.*

*Castine*, 403 S.C. 258, 266, 743 S.E.2d 93, 96 (Ct. App. 2013). Defamation can occur in both direct and indirect manners; even "[a] mere insinuation is actionable as a positive assertion if it is false and malicious and its meaning is plain." *Id.* at 138-39, 748. (citing *Eubanks v. Smith*, 292 S.C. 57, 354 S.E.2d 898 (1987)). "It is well established that a defamatory insinuation may be made by actions or conduct as well as by word." *Tyler v. Macks Stores*, 275 S.C. 456, 272 S.E.2d 633, 634 (1980).

An oral statement or action is defamatory *per se* when it charges the plaintiff with "(1) commission of a crime of moral turpitude; (2) contraction of a loathsome disease; (3) adultery; (4) unchastity; or (5) unfitness in one's business or profession." *Castine*, 403 S.C. at 268, 743 S.E.2d at 97-98 (quoting *Erickson v. Jones Street Publishers, L.L.C.*, 368 S.C. 444, 465–66 n. 7, 629 S.E.2d 653, 664 n. 7 (2006)). A written statement is defamatory *per se* if it reduces a person's character or reputation, disgraces him, or renders him odious, contemptible, or ridiculous. *Id.* at 268, 98 (quoting *Holtzscheiter v. Thomson Newspapers, Inc.*, 332 S.C. 502, 510–11, 506 S.E.2d 497, 502 (1998)). If the defamation is *per se*, the court "presumes a defendant acted with common law malice and the plaintiff suffered general damages." *Id.* at 268, 97.

**(5)** **Absent special instructions from the assigned judge, the parties shall propose dates for the following deadlines listed in Local Civil Rule 16.02.**
    **i. Exchange of Fed. R. Civ. P. 26(a)(2) Expert Disclosures**
    **ii. Completion of discovery.**

**RESPONSE:** Plaintiff and Defendants consulted and agreed upon a proposed First Amended Scheduling Order that will be submitted to the Court. This proposed order modifies deadlines originally set forth in the Scheduling Order filed August 27, 2019.

**(6)** **The parties shall inform the Court whether there are any special circumstances which would affect the time frames applied in preparing the scheduling order.**

**RESPONSE:**

The limited jurisdictional process with the individual defendants may later necessitate a new scheduling order.

**(7)** **The parties shall provide any additional information requested in the Pre-Scheduling Order (Local Civil Rule 16.01) or otherwise requested by the assigned judge.**

**RESPONSE:**

Not applicable.

          **CROMER BABB PORTER & HICKS, LLC**

          BY:  *s/J. Paul Porter*
              J. Paul Porter (#11504)
              Elizabeth Bowen (#12705)
              1418 Laurel Street, Suite A
              Post Office Box 11675
              Columbia, South Carolina 29211
              Phone  803-799-9530
              Fax     803-799-9533

          *Attorneys for Plaintiff*

September 30, 2019
Columbia, South Carolina