# EXHIBIT H

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**COLUMBIA DIVISION**

|  |  |
|---|---|
| JON MICHAEL VITALE,<br><br>        Plaintiff,<br><br>    v.<br><br>MIMEDX GROUP, INC., PARKER H.<br>PETIT, and WILLIAM C. TAYLOR,<br><br>        Defendants. | Case No. 19-cv-00529-RBH<br><br>**DEFENDANT PARKER H. PETIT'S**<br>**RESPONSES TO PLAINTIFF'S**<br>**REQUESTS** |

## PRELIMINARY STATEMENT AS TO ALL RESPONSES

Due to the confidential nature of the information contained in some of these responses, certain responses or portions thereof have been designated "Confidential."  Although a protective order has not yet been entered in this case, undersigned counsel for Defendant Parker H. Petit is providing this information to Paul J. Porter (counsel for Plaintiff Jon Michael Vitale) based upon the parties' agreement that duly-marked responses will be treated as "Confidential" pursuant to the draft protective order that counsel for Mr. Petit sent to Mr. Porter on September 13, 2019. Therefore, unless and until the Court orders or the parties agree otherwise, the portions of these responses identified as Confidential will receive the full scope of protection provided to documents designated Confidential in said draft protective order.

## I.     RESPONSES TO INTERROGATORIES

### PRELIMINARY STATEMENT TO
### INTERROGATORY RESPONSES AND OBJECTIONS

Pursuant to the Federal Rules of Civil Procedure 26 and 33 and the Local Rules of the U.S. District Court for the District of South Carolina, Defendant Parker H. Petit, by and through his undersigned attorneys, hereby provides his responses and objections to Plaintiff Jon Michael Vitale's Interrogatories.

Mr. Petit's investigation in this matter is ongoing and these responses reflect his information to date.  Mr. Petit reserves the right, at any time, to revise, correct, add to, or clarify these responses pursuant to Federal Rule of Civil Procedure 26(e).   Neither Mr. Petit's objections, or any response, constitutes a waiver of any objection as to admissibility, privilege, materiality, confidentiality, or as to appropriateness of the burden of production or proof on any issue.

### GENERAL OBJECTIONS
### TO INTERROGATORY RESPONSES AND OBJECTIONS

The following general objections (the "General Objections") apply to each of the Interrogatories, and are incorporated by reference into each of the following specific responses as if set forth fully therein:

1.      Mr. Petit objects to the Interrogatories, and the Definitions and Instructions therein, on the ground and to the extent that they purport to impose any obligations on Mr. Petit that are beyond the scope of Rules 26 and 33 of the Federal Rules of Civil Procedure, or the applicable rules and orders of this Court, including the Court's August 2, 2019 order, which authorized only limited, jurisdictional discovery ("Jurisdictional Discovery").  Mr. Petit will produce documents and information consistent with the foregoing rules and orders.

2.      Mr. Petit objects on the grounds and to the extent that the Interrogatories seek confidential, private, or personal information that is not relevant to the claims and defenses in this case and/or the limited issues under consideration in the Jurisdictional Discovery.  Mr. Petit objects that such Interrogatories are oppressive, improper, and harassing.

3.      Mr. Petit incorporates his objections to the Definitions set forth in his Responses to Vitale's Requests for Production of Documents as if set forth herein.

4.      Because the Court authorized only limited, Jurisdictional Discovery, Mr. Petit objects to the Interrogatories, and the Definitions and Instructions that accompany them, to the extent that they seek information not relevant to the limited issues to be addressed in said Jurisdictional Discovery, and therefore are oppressive, harassing, and/or unduly burdensome to answer.

5.      Mr. Petit objects to the Interrogatories, and the Definitions and Instructions that accompany them, to the extent that the Interrogatories are not proportional to the needs of the limited issues to be addressed in Jurisdictional Discovery, as they are overly broad, vague as to the scope of what they seek, ambiguous, unintelligible, duplicative, oppressive, harassing, or unduly burdensome to answer.  Where a term is vague or ambiguous, Mr. Petit will respond based on his understanding of the term. Mr. Petit will undertake reasonable efforts to obtain information that is responsive, relevant, and within the scope of the Court's directive for limited, Jurisdictional Discovery only.

6.      Mr. Petit objects to the Interrogatories to the extent they call for legal conclusions in order to produce documents or things.  Any response or production by Mr. Petit shall not be construed as providing a legal conclusion regarding the meaning or application of any terms or phrase used in the Interrogatories, and the Definitions and Instructions that accompany them.

7.     Mr. Petit objects to the Interrogatories to the extent that they seek information regarding MiMedx Group, Inc. ("MiMedx") and which should, therefore, be directed toward MiMedx, and not Mr. Petit in his individual capacity.  Mr. Petit's responses are based only on information that is within his personal knowledge and in his individual capacity.

8.     Mr. Petit objects to Interrogatories, and the Definitions and Instructions that accompany them, employing Vitale's definition of "identify" as applied to "person" as requiring the identification to include "present or last known address  and  telephone  number,  occupation, job  title,  business  affiliation   and/or  nature  of business."  Mr. Petit will include such information only if it is within his personal knowledge and otherwise objects to the instruction as unduly burdensome to the extent it requires an investigation.  Further, any information sought regarding any such "person's" personal information that is not within the personal knowledge of Mr. Petit is equally available to Vitale through his own investigation.

9.     Mr. Petit objects to the Interrogatories to the extent they seek information subject to the attorney-client privilege, attorney work product immunity, common interest privilege, and/or other privilege or immunity. The inadvertent disclosure of information protected by such privileges and protections shall not constitute waiver of the applicable privilege and/or protection either as to the information inadvertently disclosed or as to any other information related thereto. If any privileged or protected information were to be disclosed by Mr. Petit in the absence of a Court order compelling such disclosure, such disclosure would be inadvertent, and in such event, Mr. Petit requests the immediate return of any such information and all documents or tangible things containing such inadvertently disclosed information upon notification to Vitale.

10.     Mr. Petit objects to the Interrogatories, and the Definitions and Instructions that accompany them, as overly broad, unduly burdensome, not relevant to the claims or defenses of

any party, and not proportional to the needs of the case to the extent that it purports to require the production of a privilege log for materials generated after the filing of Vitale's complaint on or about January 21, 2019. Such documents will not be logged.

11.     Mr. Petit objects to the Interrogatories to the extent that they seek information and/or documents not within the possession, custody, or control of Mr. Petit. An objection on this ground does not constitute a representation or admission that such information and/or documents do, in fact, exist.

12.     Mr. Petit objects to the Interrogatories to the extent they seek discovery that is more appropriately sought by other means and to the extent they seek information that is cumulative or duplicative of information being provided through other forms of discovery.

13.     Mr. Petit objects to the Interrogatories to the extent they fail to include a time period restriction, which leaves the Interrogatories applicable to all time. As such, said Interrogatories seek irrelevant information from periods of time not possibly relevant to the limited issues to be addressed in Jurisdictional Discovery. Further, said Interrogatories' open-ended time period renders them unduly burdensome in that they require Mr. Petit to provide information from all time.

14.     Any objection by Mr. Petit does not constitute a representation or admission that such information and/or documents do in fact exist or are known.

15.     No incidental or implied admissions are intended by these responses, and these responses shall not be construed to be a waiver by Mr. Petit of all or any part of any objection to Vitale's Interrogatories.

16.     By responding to any Interrogatory, Mr. Petit does not concede the relevance or admissibility of the information and/or documents requested, nor does Mr. Petit adopt the legal characterizations of the terms and words used in the Interrogatory.

17.     Mr. Petit's responses are made without prejudice, and Mr. Petit reserves the right, at any time, to revise, correct, add to, or clarify these General Objections and the following Specific Objections and Responses pursuant to Federal Rule of Civil Procedure 26(e). By providing these General and Specific Objections, Mr. Petit does not waive any of his defenses or admit any liability. Neither Mr. Petit's General and Specific Objections, nor any response to any specific Interrogatory, constitutes a waiver of any objection as to admissibility, privilege, relevance, materiality, confidentiality or as to appropriateness of the burden of production or proof on any issue.

## RESPONSES AND OBJECTIONS TO INTERROGATORIES

**INTERROGATORY NO. 1:**

Identify all South Carolina sales representatives who were terminated in December 2016.

**RESPONSE TO INTERROGATORY NO. 1:**

In addition to his General Objections, Mr. Petit objects to this Interrogatory as impermissibly vague, overly broad, and unduly burdensome, given that the terms "South Carolina sales representatives" and "terminated" are undefined and subject to multiple interpretations or definitions. Furthermore, Mr. Petit objects to this Interrogatory as unduly burdensome because he is no longer an employee of MiMedx, and therefore does not have information or documents in his possession, custody, or control to conclusively identify all individuals employed by MiMedx's sales department who lived in, worked in, or had a connection to MiMedx's business in South Carolina in December 2016, and who separated from the company in or about that time.

6

**INTERROGATORY NO. 2:**

Identify all sales representatives responsible for business in South Carolina who were terminated in December 2016.

**RESPONSE TO INTERROGATORY NO. 2:**

In addition to his General Objections, Mr. Petit objects to this Interrogatory as impermissibly vague, overly broad, and unduly burdensome, given that the terms "sales representatives," "responsible for businesses," and "terminated" are undefined and subject to multiple interpretations or definitions. Furthermore, Mr. Petit objects to this Interrogatory as unduly burdensome because he is no longer an employee of MiMedx, and therefore does not have information or documents in his possession, custody, or control to conclusively identify all individuals employed by MiMedx's sales department who lived or worked in South Carolina in December 2016, and who separated from the company in or about that time. In addition, Mr. Petit objects to this Interrogatory because it has, in substance, been previously propounded in Interrogatory No. 1, and repeated discovery into the same material constitutes oppression.

**INTERROGATORY NO. 3:**

Identify all individuals in MiMedx's sales organization who were disciplined by MiMedx in accord with your statement in the MiMedx press release:

> . . . Additionally, we have taken disciplinary action against a small number of other individuals in our sales organization who were also found to be associated with this or similar improper acts.

(Dkt. 20-1).

**RESPONSE TO INTERROGATORY NO. 3:**

In addition to his General Objections, Mr. Petit objects to this Interrogatory as impermissibly vague, overly broad, and unduly burdensome, given that the term "sales

organization" is undefined and multiple interpretations or definitions. In addition, Mr. Petit objects to this interrogatory in that it improperly assumes a fact – i.e., that this statement is Mr. Petit's, rather than MiMedx's. Mr. Petit neither spoke nor wrote this statement; it was attributed to him for purposes of the MiMedx press release in which they appear. Further, Mr. Petit objects to this Interrogatory as unduly burdensome because he is no longer an employee of MiMedx, and therefore does not have information or documents in his possession, custody, or control to conclusively identify all "small number of individuals" encompassed by MiMedx's statement that was attributed to him.

Subject to and without waiving the foregoing objections, Mr. Petit responds as follows, on information and belief:

The above-quoted statement was prepared in Georgia by another member of MiMedx's staff in connection with the drafting of the overall press release in which it appears. Mr. Petit, while in Georgia (the state where he then lived and worked), accepted its attribution to him for purposes of this MiMedx press release, in his capacity as MiMedx's Chief Executive Officer. Mr. Petit, as a former MiMedx employee, does not currently have access to Company records that enable him to conclusively identify the "small number of individuals" referred to in this statement. At the time of attribution, Mr. Petit understood that the "individuals" referred to in this statement were from multiple states. Mr. Petit cannot currently recall the names of all those employees. However, on information and belief, those individuals included:

[*CONFIDENTIALITY*: Names of individuals listed below are "Confidential"]

     i.    ██████████ (then a resident of Florida)

    ii.    ███████ (then a resident of California)

   iii.    █████████ (then a resident of a Mid-West state)

iv.    ███████  (state of residence not recalled by Mr. Petit)

v.    ██████  (then a resident of Texas)

vi.    ███████  (state of residence not recalled by Mr. Petit)

vii.    ██████  (then a resident of a Mid-West state)

viii.    ███████  (then a resident of a Mid-West state)

ix.    ██████  (then a resident of Georgia)

x.    █████  (then a resident of North Carolina)

xi.    ███████  (then a resident of Mississippi)

xii.    Jon Vitale (then a resident of South Carolina)

xiii.    ██████  (then a resident of Florida)

xiv.    ███████  (then a resident of a West Coast state)

**INTERROGATORY NO. 4:**

Describe the source or basis for your knowledge in making the above inset quote.

**RESPONSE TO INTERROGATORY NO. 4:**

In addition to his General Objections, Mr. Petit objects to this Interrogatory as impermissibly vague and unduly burdensome because "above inset quote" is undefined and unclear. However, Mr. Petit assumes that the Interrogatory is referring to the quoted language in Interrogatory No. 3. With that understanding, Mr. Petit further objects to this Interrogatory as impermissibly vague and unduly burdensome, given the limited scope of Jurisdictional Discovery. In addition, Mr. Petit objects to this interrogatory in that it improperly assumes a fact – i.e., that Mr. Petit is responsible for "making" the quoted statement. On information and belief, Mr. Petit did not "make" these words because he neither spoke nor wrote them; they were attributed to him for purposes of the press release in which they appear. Further, Mr. Petit

9

objects to this Interrogatory as unduly burdensome because he is no longer an employee of MiMedx, and therefore does not have information or documents in his possession, custody, or control to conclusively identify the sources or bases for his knowledge in accepting attribution of the quote at issue.

Subject to and without waiving the above objections, Mr. Petit states, on information and belief, that in accepting attribution of this statement he relied on the good faith efforts of and his communications with the MiMedx employees involved in MiMedx's investigation of Jess Kruchoski, Luke Tornquist, and others, the employment decisions that were made based upon that investigation, and the materials generated in the course of that investigation. Those MiMedx employees include Thornton Kuntz, Debbie Dean, Chris Cashman, and Lexi Haden.

**INTERROGATORY NO. 5:**

Who were you referencing when you made the following statement to the Atlanta Journal Constitution:

> . . . the allegations in the indictment handed down in South Carolina this week involve the dealings of just one sales representative who MiMedx fired a year and a half ago."

(Dkt. 20-2).

**RESPONSE TO INTERROGATORY NO. 5:**

In addition to his General Objections, Mr. Petit objects to this Interrogatory because it improperly assumes a fact, i.e., that Mr. Petit spoke the precise words attributed to him above, when Mr. Petit has no specific recollection of making this precise statement.

Subject to and without waiving the foregoing objections, Mr. Petit responds as follows:

In or about May 2018, Mr. Petit, while in Georgia, had a telephonic interview with a reporter from the *Atlanta Journal Constitution*, on behalf of MiMedx and in his capacity

MiMedx's Chief Executive Officer.   During that interview, Mr. Petit addressed a variety of questions concerning MiMedx's operations.   One of the issues discussed was the set of charges filed in a South Carolina federal court against several health care professionals who had some dealings with MiMedx.   Mr. Petit does not have a specific recollection of making the quoted statement attributed to him in the article.   However, Mr. Petit believes that if he made this statement or words to similar effect, he was referencing Vitale.

**INTERROGATORY NO. 6:**

Describe the source or basis for your knowledge in making the above inset quote.

**RESPONSE TO INTERROGATORY NO. 6:**

In addition to his General Objections, Mr. Petit objects to this Interrogatory as impermissibly vague and unduly burdensome because "above inset quote" is undefined and unclear.  However, Mr. Petit assumes that the Interrogatory is referring to the quoted language in Interrogatory No. 5.   With that understanding, Mr. Petit objects to this Interrogatory as impermissibly vague and unduly burdensome, given the limited scope of Jurisdictional Discovery.  In addition, Mr. Petit objects to this interrogatory in that it improperly assumes a fact – i.e., that Mr. Petit is responsible for "making" the quoted statement.   Mr. Petit has no specific recollection of making this precise statement.    Furthermore, Mr. Petit objects to this Interrogatory as unduly burdensome because he is no longer an employee of MiMedx, and therefore does not have information or documents in his possession, custody, or control to conclusively identify all bases of knowledge that he had when he spoke with the *Atlanta Journal Constitution* reporter who wrote the article in question.

**INTERROGATORY NO. 7:**

Why did you make the remarks quoted in Interrogatory 3 and Request to Admit 7.

**RESPONSE TO INTERROGATORY NO. 6:**

In addition to his General Objections, Mr. Petit objects to this Interrogatory as impermissibly vague, ambiguous, overbroad, unduly burdensome, and harassing given the limited scope of Jurisdictional Discovery. In addition, Mr. Petit objects to this interrogatory in that it improperly assumes a fact – i.e., that Mr. Petit did "make" the quoted remark. On information and belief, Mr. Petit did not "make" either of these remarks because he neither spoke nor wrote them; these remarks were attributed to him for purposes of the press release in which they appears. Further, Mr. Petit objects because this Interrogatory calls for a narrative response without limitation.

Subject to and without waiving the above objections, Mr. Petit responds as follows:

One of the reasons Mr. Petit accepted attribution of the remarks noted in Interrogatory No. 3 and Request for Admission No. 7 is that he believed it to be appropriate to include these statements in this MiMedx press release, which was aimed at reaching a nationwide audience of MiMedx's employees, shareholders, potential shareholders, and others. This press release was part of MiMedx's overall effort to address the public relations issues then facing the company in the wake of Jess Kruchoski and Luke Tornquist's false allegations. A goal of this press release was to show MiMedx's broad-based audience that the company was addressing problems within its sales staff that had come to light during the investigation of Kruchoski, Tornquist, and others. Further, in accepting this remark's attribution, Mr. Petit did not specifically have Vitale in mind as a subject of it, did not intend to target Vitale in particular, and did not intend this remark to be directed towards readers in South Carolina in particular. When Mr. Petit accepted attribution of this remark, he understood it referred to a collective of MiMedx employees from various states who, during the course of the investigation of Kruchoski, Tournquist, and others, were identified

12

as having engaged in conduct warranting adverse employment actions of various severity, including letters of reprimand and firing.

**INTERROGATORY NO. 8:**

Why did you make the remark quoted in Interrogatory 5.

**RESPONSE TO INTERROGATORY NO. 8:**

In addition to his General Objections, Mr. Petit objects to this Interrogatory as impermissibly vague, ambiguous, overbroad, unduly burdensome, and harassing given the limited scope of Jurisdictional Discovery. In addition, Mr. Petit objects to this interrogatory in that it improperly assumes a fact – i.e., that Mr. Petit did "make" the quoted remark, when he has no specific recollection of doing so. Further, Mr. Petit objects because this Interrogatory calls for a narrative response without limitation.

Subject to and without waiving the above objections, Mr. Petit responds as follows:

One of the reasons that Mr. Petit spoke to the reporter from the *Atlanta Journal Constitution* was because he believed it was appropriate, in his capacity as Chief Executive Officer of MiMedx, to provide a response from the company to the various negative news reports that had been published in and around that time period. Mr. Petit believed that MiMedx's reputation was being impugned unfairly and inappropriately, and that it was his duty, as Chief Executive Officer, to combat those attacks on MiMedx. Mr. Petit did not always agree to speak with reporters who called asking for his views on matters, but he felt these issues were important and warranted a response from the company. Mr. Petit felt it was particularly appropriate to speak to the company's hometown paper, the *Atlanta Journal Constitution*, which he believed was a paper read by many MiMedx employees in Georgia (where most of MiMedx's employees

resided).    In providing comments to the *Atlanta Journal Constitution*, a Georgia-based newspaper, Mr. Petit did not specifically intend to target readers based in South Carolina.

**INTERROGATORY NO. 9:**

Explain any denials to the below requests to admit.

**RESPONSE TO INTERROGATORY NO. 9:**

Mr. Petit objects to this Interrogatory as impermissibly vague, unduly burdensome, harassing, and improper inasmuch it attempts to impose upon Mr. Petit a duty to respond to Vitale's Requests for Admission that are greater than those imposed by the applicable rules.

Subject to and without waiving the above objections, Mr. Petit refers Vitale to his responses to Vitale's Requests for Admission.

**II.    RESPONSES TO REQUESTS TO ADMIT**

**PRELIMINARY STATEMENT**

Mr. Petit has not, at this time, fully completed discovery and investigation in this action. All information contained herein is based solely upon such information and evidence as is presently available and known to Mr. Petit upon information and belief at this time. Further discovery, investigation, research and analysis may supply additional facts, and meaning to currently known information.  Mr. Petit reserves the right to amend any and all responses herein as additional facts are ascertained, legal research is completed, and analysis is undertaken. The responses herein are made in a good faith effort to supply as much information as is presently known to Mr. Taylor.

**GENERAL OBJECTIONS TO REQUESTS FOR ADMISSION**

1.    Mr. Petit objects to the requests that impose or seek to impose any requirement or discovery obligation greater than or different from those under the Federal Rules of Civil Procedure and the applicable Local Rules and Orders of the Court, in particular the Court's

August 2, 2019 order authorizing only limited discovery into jurisdictional issues ("Jurisdictional Discovery").

2.      Mr. Petit objects to the requests to the extent they seek disclosure of information protected under the attorney-client privilege, deliberative process privilege, attorney work product doctrine, or any other applicable privilege or immunity.  Should any such disclosure by Mr. Taylor occur, it is inadvertent and shall not constitute a waiver of any privilege or immunity.

## RESPONSES AND OBJECTIONS TO REQUESTS FOR ADMISSION

**REQUEST FOR ADMISSION NO. 1**

Admit that MiMedx accused Plaintiff of competing with MiMedx in December 2016.

**RESPONSE TO REQUEST FOR ADMISSION NO. 1:**

Mr. Petit objects to this Request for Admission as unduly burdensome and harassing because it is unrelated to the limited Jurisdictional Discovery authorized by the Court.

Subject to and without waiving the foregoing objections, Mr. Petit states that he lacks sufficient knowledge to admit or deny this Request for Admission.

**REQUEST FOR ADMISSION NO. 2:**

Admit that Plaintiff was the only South Carolina sales representative terminated in December 2016.

**RESPONSE TO REQUEST FOR ADMISSION NO. 2:**

Mr. Petit objects to this Request for Admission as impermissibly vague and unduly burdensome, given that the terms "South Carolina sales representatives" and "terminated" are undefined and subject to multiple interpretations or definitions.  Mr. Petit further objects to this Request for Admission as unduly burdensome and harassing because it is unrelated to the limited Jurisdictional Discovery authorized by the Court.

Subject to and without waiving the foregoing objections, Mr. Petit states that he lacks sufficient knowledge to admit or deny this Request for Admission.

**REQUEST FOR ADMISSION NO. 3:**

Admit that Plaintiff was the only sales representative responsible for a South Carolina facility that was terminated in December 2016.

**RESPONSE TO REQUEST FOR ADMISSION NO. 3:**

Mr. Petit objects to this Request for Admission as impermissibly vague  and unduly burdensome, given that the terms "sales representatives," "responsible," and "terminated" are undefined and subject to multiple interpretations or definitions.  Mr. Petit further objects to this Request for Admission as unduly burdensome and harassing because it is unrelated to the limited Jurisdictional Discovery authorized by the Court.

Subject to and without waiving the foregoing objections, Mr. Petit states that he lacks sufficient knowledge to admit or deny this Request for Admission.

**REQUEST FOR ADMISSION NO. 4:**

Admit that MiMedx did not terminate Taft Mills in December 2016.

**RESPONSE TO REQUEST FOR ADMISSION NO. 4:**

Mr. Petit objects to this Request for Admission as impermissibly vague  and unduly burdensome, given that the term "terminated" is undefined and subject to multiple interpretations or definitions.

Subject to and without waiving the foregoing objections, Mr. Petit, on information and belief, admits that MiMedx did not fire Taft Mills in December 2016.

**REQUEST FOR ADMISSION NO. 5:**

Admit that Plaintiff was among the "small number of other individuals" referenced in the press release issued by MiMedx on December 30, 2016. (Dkt. 20-1)

**RESPONSE TO REQUEST FOR ADMISSION NO. 5:**

Admitted, on information and belief.

**REQUEST FOR ADMISSION NO. 6:**

Admit that Plaintiff was the sales representative referenced in your quote published by

the American Journal Constitution on May 11, 2018:

> . . . the allegations in the indictment handed down in South
> Carolina this week involve the dealings of just one sales
> representative who MiMedx fired a year and a half ago."

(Dkt. 20-2).

**RESPONSE TO REQUEST FOR ADMISSION NO. 6:**

Mr. Petit objects to this Request for Admission because it assumes that Mr. Petit made

this precise statement, and Mr. Petit has no specific recollection of doing so.

Subject to and without waiving the foregoing objections, Mr. Petit, on information and

belief, states that if he said these words or words to similar effect, he was referring to Vitale,

with the clarification that this quote was published by the *Atlanta Journal Constitution*, not the

"American Journal Constitution."

**REQUEST FOR ADMISSION NO. 7:**

Admit that you were referring, at least in part, to Plaintiff when you said:

> Nonetheless, when an employee violates the duty of loyalty and
> contractual obligations by selling competitive products or other
> products, employment actions must be taken. Although the sales
> employees who participated in these violations were a very small
> number of the more than 300 employees in our sales organization,
> we are always disappointed when individuals choose to follow
> self-serving financial motives rather than adhere to the high
> standards of conduct and compliance that we foster and instill at
> MiMedx.

(Dkt. 20-1).

17

**RESPONSE TO REQUEST FOR ADMISSION NO. 7:**

Denied, in part.  Mr. Petit did not "state" these words in that he neither spoke nor wrote them – rather, this remark was drafted by another member of MiMedx's staff, and Mr. Petit accepted its attribution to him for purposes of MiMedx's December 30, 2016 press release, in his capacity as Chief Executive Officer of MiMedx.   When accepting attribution, Mr. Petit understood this statement to concern a collective of individuals, from various states.   On information and belief, that collective of individuals included Vitale.

III.    **REQUESTS FOR PRODUCTION**

**PRELIMINARY STATEMENT REGARDING
REQUESTS FOR PRODUCTION**

Pursuant to the Federal Rules of Civil Procedure 26 and 34 and the Local Rules of the U.S. District Court for the District of South Carolina, Defendant Parker H. Petit, by and through his undersigned attorneys, hereby provides his responses and objections to Vitale's Requests for Production of Documents ("Requests").

Mr. Petit's investigation in this matter is ongoing and these responses reflect his information to date.  Mr. Petit reserves the right, at any time, to revise, correct, add to, or clarify these responses pursuant to Federal Rule of Civil Procedure 26(e).   Neither Mr. Petit's objections, or any response, constitutes a waiver of any objection as to admissibility, privilege, relevance, materiality, confidentiality, or as to appropriateness of the burden of production or proof on any issue.

## GENERAL OBJECTIONS TO
## <u>REQUESTS FOR PRODUCTION</u>

The following general objections (the "General Objections") apply to each of the Requests, and are incorporated by reference into each of the following specific responses as set forth fully therein:

1.      Mr. Petit objects to the Requests, and the Definitions and Instructions therein, on the ground and to the extent that they purport to impose any obligations on Mr. Petit that are beyond the scope of Rules 26 and 34 of the Federal Rules of Civil Procedure, or the applicable rules and orders of this Court, including the Court's August 2, 2019 order, which authorized only limited, jurisdictional discovery ("Jurisdictional Discovery"). Mr. Petit will produce documents and information consistent with the foregoing rules and orders.

2.      Mr. Taylor objects on the grounds and to the extent that the Requests seek confidential, private, or personal information that is not relevant to the claims and defenses in this case and/or the limited issues under consideration in the Jurisdictional Discovery.  Mr. Petit objects that such Requests are oppressive, improper, and harassing.

3.      Mr. Petit incorporates his objections to the Definitions set forth in his Responses to Vitale's Interrogatories as if set forth herein.

4.      Mr. Petit objects to the Requests, and the Definitions and Instructions that accompany them, to the extent that the Court authorized only limited, Jurisdictional Discovery, and the Requests are not relevant to the limited issues to be addressed in said Jurisdictional Discovery, and therefore are oppressive, harassing, or unduly burdensome to answer.

5.      Mr. Petit objects to the Requests, and the Definitions and Instructions that accompany them, to the extent that the Requests are not proportional to the needs of the limited issues to be addressed in Jurisdictional Discovery, as they are overly broad, vague as to the scope

19

of what they seek, ambiguous, unintelligible, duplicative, oppressive, harassing, or unduly burdensome to answer. Where a term is vague or ambiguous, Mr. Petit will respond based on his understanding of the term. Mr. Petit will undertake reasonable efforts to obtain information that is responsive, relevant, and within the scope of the Court's directive for limited, Jurisdictional Discovery only

6.    Mr. Petit objects to the Requests to the extent they call for legal conclusions in order to produce documents or things. Any response or production by Mr. Petit shall not be construed as providing a legal conclusion regarding the meaning or application of any terms or phrase used in the Requests, and the Definitions and Instructions that accompany them.

7.    Mr. Petit objects to the Requests to the extent that they seek information from MiMedx Group, Inc. ("MiMedx") and which should, therefore, be directed toward MiMedx, and not Mr. Petit in his individual capacity. Mr. Petit 's responses are based only on material that is within his personal possession, custody, or control.

8.    Mr. Petit objects to the Requests, and the Definitions and Instructions that accompany them, employing Vitale's definition of "identify" as applied to "person" as requiring the identification to include "present or last known address and telephone number, occupation, job title, business affiliation and/or nature of business." Mr. Petit will include such information only if it is within his personal knowledge and otherwise objects to the instruction as unduly burdensome to the extent it requires an investigation. Further, any information sought regarding any such "person's" personal information that is not within the personal knowledge of Mr. Petit is equally available to Vitale through his own investigation.

9.      Mr. Petit objects to these Requests to the extent that they seek documents and/or information in which the burden or expense of producing the proposed discovery outweighs the likely benefit, particularly given the limited scope of this Jurisdictional Discovery.

10.     Mr. Petit objects to the Requests to the extent they seek information subject to the attorney-client privilege, attorney work product immunity, common interest privilege, and/or other privilege or immunity. The inadvertent disclosure of information protected by such privileges and protections shall not constitute waiver of the applicable privilege and/or protection either as to the information inadvertently disclosed or as to any other information related thereto. If any privileged or protected information were to be disclosed by Mr. Petit in the absence of a Court order compelling such disclosure, such disclosure would be inadvertent, and in such event, Mr. Petit requests the immediate return of any such information and all documents or tangible things containing such inadvertently disclosed information upon notification to Vitale.

11.     Mr. Petit objects to the Requests, and the Definitions and Instructions that accompany them, as overly broad, unduly burdensome, not relevant to the claims or defenses of any party, and not proportional to the needs of the case to the extent that it purports to require the production of a privilege log for materials generated after the filing of Vitale's complaint on or about January 21, 2019.  Such documents will not be logged.

12.     Mr. Petit objects to the Requests to the extent that they seek information and/or documents not within the possession, custody, or control of Mr. Petit. An objection on this ground does not constitute a representation or admission that such information and/or documents do, in fact, exist.

13.     Mr. Petit objects to the Requests to the extent they seek discovery that is more appropriately sought by other means and to the extent they seek information that is cumulative or duplicative of information being provided through other forms of discovery.

14.     Mr. Petit objects to the Requests to the extent they call for a legal conclusion.

15.     Mr. Petit objects to the Requests to the extent they fail to include a time period restriction, which leaves the Requests applicable to all time.  As such, said Requests seek irrelevant information from periods of time not possibly relevant to the limited jurisdictional issues at play in the Jurisdictional Discovery.  Further, said Requests' open-ended time period renders them unduly burdensome in that they require Mr. Petit to provide information from all time.

16.     Any objection by Mr. Petit does not constitute a representation or admission that such information and/or documents do in fact exist or are known.

17.     No incidental or implied admissions are intended by these responses, and these responses shall not be construed to be a waiver by Mr. Petit of all or any part of any objection to Vitale's Requests.

18.     By responding to any Request, Mr. Petit does not concede the relevance or admissibility of the information and/or documents requested, nor does Mr. Petit adopt the legal characterizations of the terms and words used in the Request.

19.     Mr. Petit 's responses are made without prejudice, and Mr. Petit reserves the right, at any time, to revise, correct, add to, or clarify these General Objections and the following Specific Objections and Responses pursuant to Federal Rule of Civil Procedure 26(e). By providing these General and Specific Objections, Mr. Petit does not waive any of his defenses or admit any liability.  Neither Mr. Petit 's General and Specific Objections, nor any response to

any specific Request, constitutes a waiver of any objection as to admissibility, privilege, relevance, materiality, confidentiality or as to appropriateness of the burden of production or proof on any issue.

## RESPONSES AND OBJECTIONS TO
## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION 1:**

All documents, electronic mail messages, metadata, memoranda, notes, correspondence, drafts, and written material of any kind that relate or refer in any way to the press release issued by MiMedx on December 30, 2016. (Dkt. 20-1).

**RESPONSE TO REQUEST FOR PRODUCTION 1:**

In addition to his General Objections, Mr. Petit objects to this Request as impermissibly vague, overly broad, unduly burdensome, harassing, and not proportional to the needs of the limited Jurisdictional Discovery authorized by the Court, as this request seeks "[a]ll documents, [etc.] of any kind that relate or refer in any way to the press release issued by MiMedx on December 30, 2016," and does not relate to the question of whether this Court may exercise personal jurisdiction over Mr. Taylor or Mr. Petit, such as whether the allegedly defamatory statements manifest an intention to target South Carolina readers, or whether Mr. Taylor or Mr. Petit have sufficient connections to the State of South Carolina such that they might be subject to the Court's general jurisdiction.  Further, Mr. Petit objects to this Request as impermissibly vague, overly burdensome, and not proportional to the needs of the limited discovery authorized by the Court, in that it lacks any time de-limiter.  Moreover, this request is impermissibly vague, overly broad, unduly burdensome, and not proportional to the needs of the limited discovery authorized by the Court in that it requests "[a]ll … metadata," given the vast array of irrelevant information potentially encompassed by such a request.

Subject to and without waiving the foregoing objections, Mr. Petit is willing to produce only those non-privileged documents within his possession, custody, and control that are both responsive to this request and properly come within the limited scope of Jurisdictional Discovery, to the extent found after a reasonable search. At this time, however, the only documents Mr. Petit has located that may fit within that appropriate set of limitations are materials that MiMedx objects to Mr. Petit producing, based upon an assertion of privilege. Should this privilege question resolve in favor of disclosure, Mr. Petit is willing to produce these documents at a mutually-agreeable place and time, and he is willing to meet-and-confer on this issue.

**REQUEST FOR PRODUCTION 2:**

All documents, electronically stored information, electronic mail messages, metadata, memoranda, notes, correspondence, drafts, and written material of any kind that relate or refer in any way to the quotes by Defendant Petit published by the Atlanta Journal Constitution. (Dkt. 20-2).

**RESPONSE TO REQUEST FOR PRODUCTION 2:**

In addition to his General Objections, Mr. Petit objects to this Request as impermissibly vague, overly broad, unduly burdensome, harassing, and not proportional to the needs of the limited Jurisdictional Discovery authorized by the Court, as this request seeks "[a]ll documents, [etc.] of any kind that relate or refer in any way to the quotes by Defendant Petit published by the Atlanta Journal Constitution," and does not relate to the question of whether this Court may exercise personal jurisdiction over Mr. Taylor or Mr. Petit, such as whether the allegedly defamatory statements at issue manifest an intention to target South Carolina, or whether Mr. Taylor or Mr. Petit have sufficient connections to the State of South Carolina such that they

24

might be subject to the Court's general jurisdiction.  Further, Mr. Petit objects to this Request as impermissibly vague, overly burdensome, and not proportional to the needs of the limited discovery authorized by the Court, in that it lacks any time de-limiter.  Moreover, this request is impermissibly vague, overly broad, unduly burdensome, and not proportional to the needs of the limited discovery authorized by the Court in that it requests "[a]ll … metadata," given the vast array of irrelevant information potentially encompassed by such a request.

Subject to and without waiving the foregoing objections, Mr. Petit is willing to produce only those non-privileged documents within his possession, custody, and control that are both responsive to this request and properly come within the limited scope of Jurisdictional Discovery, to the extent found after a reasonable search. At this time, however, the only documents Mr. Petit has located that may fit within that appropriate set of limitations are materials that MiMedx objects to Mr. Petit producing, based upon an assertion of privilege. Should this privilege question resolve in favor of disclosure, Mr. Petit is willing to produce these documents at a mutually-agreeable place and time, and he is willing to meet-and-confer on this issue.

**REQUEST FOR PRODUCTION 3:**

All communications to Defendant Petit (in any format) about the Plaintiff prior to the publication of the AJC Article at Dkt. 20-2.

**RESPONSE TO REQUEST FOR PRODUCTION 3:**

In addition to his General Objections, Mr. Petit objects to this Request as impermissibly vague, overly broad, unduly burdensome, harassing, and not proportional to the needs of the limited Jurisdictional Discovery authorized by the Court, as this request seeks "[a]ll communications to [Mr.] Taylor about the Plaintiff on or prior to the date of the [December 30,

2016] press release [at issue in this case]," and does not relate to the question of whether this Court may exercise personal jurisdiction over Mr. Taylor or Mr. Petit, such as whether the allegedly defamatory statements at issue manifest an intention to target South Carolina, or whether Mr. Taylor or Mr. Petit have sufficient connections to the State of South Carolina such that they might be subject to the Court's general jurisdiction.

Subject to and without waiving the foregoing objections, Mr. Petit is willing to produce only those non-privileged documents within his possession, custody, and control that are both responsive to this request and properly come within the limited scope of Jurisdictional Discovery, to the extent found after a reasonable search. At this time, however, the only documents Mr. Taylor has located that may fit within that appropriate set of limitations are materials that MiMedx objects to Mr. Taylor producing, based upon an assertion of privilege. Should this privilege question resolve in favor of disclosure, Mr. Taylor is willing to produce these documents at a mutually-agreeable place and time, and he is willing to meet-and-confer on this issue.

**REQUEST FOR PRODUCTION 4:**

All documents, electronically stored information, electronic mail messages, metadata, memoranda, notes, correspondence, drafts, and written material of any kind identified, referred to, related to, or utilized by Defendant in answering Plaintiff's Interrogatories and Requests to Admit.

**RESPONSE TO REQUEST FOR PRODUCTION 4:**

Mr. Petit objects to this Request for Production as impermissibly vague, overly broad, unduly burdensome, and harassing because it seeks "[a]ll documents, [etc] of any kind" that were "identified" or "related to … Defendant in answering" Vitale's Interrogatories and Requests to

26

Admit, as those descriptors have no clear meaning.

Subject to and without waiving the foregoing objections, Mr. Petit agrees to produce non-privileged documents that he referred to or utilized in answering Vitale's Interrogatories and Requests to Admit.  At this time, however, the only documents Mr. Petit has located that may fit within that appropriate set of limitations are materials that MiMedx objects to Mr. Petit producing, based upon an assertion of privilege.  Should this privilege question resolve in favor of disclosure, Mr. Petit is willing to produce these documents at a mutually-agreeable place and time, and he is willing to meet-and-confer on this issue.

### SIGNATURE

Dated: September 13, 2019        /s/Beth B. Richardson
                                 Beth B. Richardson
                                 ROBINSON GRAY STEPP & LAFFITTE, LLC
                                 1310 Gadsden Street
                                 Columbia, SC  29201
                                 Phone: (803) 231-7819
                                 Fax: (803) 231-7861
                                 brichardson@robinsongray.com

                                 William D. Weinreb (*pro hac vice*)
                                 Michael T. Packard (*pro hac vice*)
                                 QUINN EMANUEL URQUHART & SULLIVAN, LLP
                                 111 Huntington Avenue, Suite 520
                                 Boston, MA 02199
                                 Phone: 617.712.7100
                                 Fax: 617.712.7200
                                 billweinreb@quinnemanul.com
                                 michaelpackard@quinnemanuel.com

                                 *Attorneys for Defendants Parker H. Petit*
                                 *and William C. Taylor*

## CERTIFICATE OF SERVICE

I hereby certify that on **September 13, 2019,** a copy of the foregoing was transmitted by email and U.S. Postal service to the following:

>    J. Paul Porter
>    Cromer Babb Porter & Hicks, LLC
>    1418 Laurel Street, Ste. A
>    Post Office Box 11675
>    Columbia, South Carolina 29211
>    Paul@CBPHLaw.com


September 13, 2019                          /s/Beth B. Richardson
                                           Beth B. Richardson