UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Jon Michael Vitale, | Civil Action No.: 3:19-cv-00529-RBH |
| Plaintiff, | |
| v. | **ORDER** |
| MiMedx Group, Inc., Parker H. Petit, and William C. Taylor, | |
| Defendants. | |

This matter is before the Court on Defendants Parker H. Petit ("Petit") and William C. Taylor's ("Taylor") motion to dismiss. [ECF No. 20]. For the reasons stated below, the Court grants Defendants Petit and Taylor's motion to dismiss.[1]

**Background**

This action arises from Plaintiff's termination from employment with Defendant MiMedx Group, Inc. ("MiMedx"). Plaintiff's complaint alleges wrongful termination in violation of public policy and unjust enrichment against MiMedx. The complaint also alleges a defamation claim against MiMedx, Petit, and Taylor. Petit was the Chief Executive Officer and Chairman of the Board of MiMedx. Taylor was the President, Chief Operating Officer, and a Member of the Board of MiMedx.

As to the defamation claim, which is the only claim alleged against Petit and Taylor and thus the only claim relevant to the pending motion to dismiss, Plaintiff's complaint alleges that "Defendants defamed and slandered Plaintiff by terminating him on false grounds then falsely stating or insinuating

---

[1] Under Local Civil Rule 7.08 (D.S.C.), "hearings on motions may be ordered by the Court in its discretion. Unless so ordered, motions may be determined without a hearing." Upon review of the briefs and evidence submitted by the parties following jurisdictional discovery, the Court finds that a hearing with live testimony is not necessary.

in at least two separate media publications that Plaintiff was terminated for actions that amount to criminal misconduct and professional unfitness." [Complaint, ECF No. 1-1 at ¶ 74].

The defamation claim concerns statements that appeared in a December 2016 MiMedx press release [ECF No. 20-1] and statements that appeared in an article published in May 2018 by the Atlanta Journal-Constitution [ECF No. 20-2], which is an Atlanta, Georgia publication. Both the MiMedx press release and the article in the Atlanta Journal-Constitution were published online.

The MiMedx press release does not explicitly identify Plaintiff and quotes Petit as saying:

> [W]e terminated the employment of and filed lawsuits against two sales employees, Jess Kruchoski and Luke Tornquist, for breaches of common law and contractual obligations to MiMedx. Through further investigation, the Company has determined that two additional sales employees engaged in acts warranting termination of employment as well as other actions. Correspondingly, lawsuits have now been filed against these two former sales employees, Michael Fox and Harold Purdy. Additionally, we have taken disciplinary action against a small number of other individuals in our sales organization who were also found to be associated with this or similar improper acts.
>
> . . .
>
> It is important to note that the two new lawsuits and the recent terminations were not related to allegations made against the Company by Mr. Kruchoski and Mr. Tornquist. The investigations conducted by our Board of Directors and MiMedx management found no merit to the actions alleged in the lawsuit filed by Messrs. Kruchoski and Tornquist. Nonetheless, when an employee violates the duty of loyalty and contractual obligations by selling competitive products or other products, employment actions must be taken. Although the sales employees who participated in these violations were a very small number of the more than 300 employees in our sales organization, we are always disappointed when individuals choose to follow self-serving financial motives rather than adhere to the high standards of conduct and compliance that we foster and instill at MiMedx.

[MiMedx Press Release, ECF No. 20-1].

The press release quotes Taylor as saying:

> The Company took employment actions with various other employees based on the degree of transgression and the openness and willingness of these employees to cooperate in the Company's investigation. No legal actions have been taken with individuals who have cooperated and have been truthful with the Company during the investigation.

*Id*.

The May 2018 article published by the Atlanta Journal-Constitution is titled "VA workers accused of taking gifts to push Marietta firm's products." [Atlanta Journal-Constitution Article, ECF No. 20-2]. The article does not explicitly identify Plaintiff and attributes the following statement to Petit:

> [Petit] says the allegations in the indictment handed down in South Carolina this week involve the dealings of just one sales representative who MiMedx fired a year and a half ago.
>
> . . .
>
> When the company found out what the representative was doing, [Petit] said it took the information to the VA's Office of Inspector General.
>
> . . .
>
> We've been very forthcoming when we feel like our sales reps or sales managers have violated a federal regulation. . . In this particular case, we terminated an employee, a sales employee, responsible for that particular facility about a year and a half ago. So it's not like we are uninvolved here.

*Id*.

Plaintiff alleges that he was the only South Carolina sales representative who was terminated during the referenced period, therefore the statement recklessly insinuates that Plaintiff was guilty of bribing federal employees. [Complaint, ECF No. 1-1 at ¶ 64].

Petit and Taylor are both residents of Georgia and have moved to dismiss the defamation claim

3

for lack of personal jurisdiction and failure to state a claim.[2] On August 2, 2019, the Court granted Plaintiff, Petit, and Taylor the opportunity to conduct limited discovery on the issue of personal jurisdiction. Following the jurisdictional discovery, Plaintiff filed a supplemental brief on November 27, 2019. Petit and Taylor filed a supplemental brief on December 9, 2019.

### Rule 12(b)(2) Standard

When a nonresident defendant challenges personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the plaintiff has the ultimate burden of proving facts supporting jurisdiction over the defendant by a preponderance of the evidence. *See Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016); *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). The Fourth Circuit has stated that the plaintiff's burden of proof "varies according to the [procedural] posture of [the] case and the evidence that has been presented to the court." *Grayson*, 816 F.3d at 268. "[W]hen the court addresses the personal jurisdiction question by reviewing only the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint, a plaintiff need only make a *prima facie* showing of personal jurisdiction to survive the jurisdictional challenge." *Id.*; *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009).

However, if the court has provided the parties a fair opportunity to present both the relevant jurisdictional evidence and their legal arguments, the Court "must hold the plaintiff to its burden of proving facts, by a preponderance of the evidence, that demonstrate the court's personal jurisdiction over the defendant." *Grayson*, 816 F.3d at 268. Where, as here, the parties have engaged in discovery on the

---

[2] In a previous Order, which denied Defendant MiMedx's [ECF No. 21] motion to dismiss, the Court found that Plaintiff had sufficiently pled his defamation cause of action. *See* [Order, ECF No. 34 at 15].

4

issue of personal jurisdiction, submitted relevant jurisdictional evidence, and filed supplemental briefs setting forth their legal arguments, the plaintiff must establish personal jurisdiction by a preponderance of the evidence. *See id.*; *see also Hamburg Sudamerikanische Dampfschiffahrts–Gesellschaft, KG v. Texport, Inc.*, 954 F. Supp. 2d 415, 419–20 (D.S.C. 2013) (holding the plaintiff to a preponderance of the evidence standard because the parties had engaged in jurisdictional discovery); *AARP v. Am. Family Prepaid Legal Corp.*, 604 F. Supp. 2d 785, 797 (M.D.N.C. 2009) (same). "[O]nly when a material jurisdictional fact is disputed and that fact overlaps with a fact that needs to be resolved on the merits by a jury might a court defer its legal ruling on personal jurisdiction to let the jury find the overlapping fact." *Grayson*, 816 F.3d at 267.

**Discussion**

Defendants Petit and Taylor move to dismiss the defamation claim for lack of personal jurisdiction. For a district court to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment. *Carefirst of Md., Inc.*, 334 F.3d at 396; *Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001). Because the scope of South Carolina's long-arm statute is coextensive with the Due Process Clause, the statutory inquiry merges with the constitutional due process analysis. *ESAB Grp., Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 391 (4th Cir.2012) ( "Because the scope of South Carolina's long-arm statute is coextensive with the Due Process Clause, we proceed directly to the constitutional analysis"). "To satisfy the constitutional due process requirement, a defendant must have sufficient 'minimum contacts' with the forum state such that 'the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"

5

*Consulting Eng'rs Corp.*, 561 F.3d at 277; *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

There are two types of personal jurisdiction: general and specific. "The standard for determining the existence of personal jurisdiction over a nonresident defendant varies, depending on whether the defendant's contacts with the forum state also provide the basis for the suit." *Carefirst of Md., Inc.*, 334 F.3d at 397. If the defendant's contacts with the forum state form the basis for the suit, those contacts may establish "specific jurisdiction" over the defendant. *Id*. If, however, the defendant's contacts with the state are not also the basis for the suit, then the court must have "general jurisdiction" over the defendant. *Id*. General jurisdiction arises from a defendant's "continuous and systematic" activities within the state. *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 711–12 (4th Cir.2002). In this case, there is no suggestion that Petit or Taylor engaged in "continuous and systematic" activities within South Carolina. Accordingly, the Court's inquiry is limited to whether the Plaintiff has established specific personal jurisdiction over Petit and Taylor.

The Fourth Circuit employs a three-part test to determine whether the exercise of specific personal jurisdiction over a non-resident defendant comports with the requirements of due process. *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 559 (4th Cir. 2014). Under this test, the court must consider (1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally "reasonable." *Universal Leather, LLC*, 773 F.3d at 559; *ALS Scan, Inc.*, 293 F.3d at 711–12.

The first prong articulates the minimum contacts requirement of constitutional due process that the defendant purposefully avail himself of the privilege of conducting business under the laws of the forum state. *Consulting Eng'rs Corp.*, 561 F.3d at 278. The "'purposeful availment' requirement

6

ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random, 'fortuitous,' or 'attenuated' contacts.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). To the contrary, the defendant must have "purposefully established minimum contacts in the forum State" such "that [it] should reasonably anticipate being haled into court there." *Burger King*, 471 U.S. at 474.

The second prong requires that the defendant's contacts with the forum state form the basis of the suit. *Id*. at 278-79.

"The third prong - that the exercise of personal jurisdiction be constitutionally reasonable - permits a court to consider additional factors to ensure the appropriateness of the forum once it has determined that a defendant has purposefully availed itself of the privilege of doing business there." *Id*. at 279. Those factors include: 1) the burden on the defendant of litigating in the forum; 2) the interest of the forum state in adjudicating the dispute; 3) the plaintiff's interest in obtaining convenient and effective relief; 4) the shared interest of the states in obtaining efficient resolution of disputes; and 5) the interests of the states in furthering substantive social policies. *Id*.

Additionally, "in-forum *effects* of out-of-forum conduct can constitute minimum contacts with the forum sufficient to support personal jurisdiction." *Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 230 (4th Cir. 2019) (emphasis added) (citing *Walden v. Fiore*, 571 U.S. 277, 287-88 (2014) and *Calder v. Jones*, 465 U.S. 783 (1984)). Under the so-called "effects test" set forth in *Calder v. Jones*, 465 U.S. 783 (1984), the plaintiff must establish that specific personal jurisdiction is proper by showing that "(1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum, such that the forum can be said to be the focal point of the harm; and (3) the defendant expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity." *Consulting Eng'rs Corp.*, 561 F.3d at 278; *Carefirst of Md., Inc.*, 334 F.3d at

398 n. 7. The Fourth Circuit recently noted "[t]here are [ ] important limitations on this principle." *Hawkins*, 935 F.3d at 230. The "effects" must create a connection to the *forum*, not just to the parties who happen to live there. *Id*. The connection must be "substantial" and "a person cannot be haled into the forum simply because he knew that his conduct would have incidental effects there; he must have 'expressly aimed' his conduct at the forum." *Id*. The forum must be the "focal point" of the conduct. *Id*. Also, "mere injury to a forum resident is not a sufficient connection to the forum." *Walden v. Fiore*, 571 U.S. 277, 290 (2014). "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden*, 571 U.S. at 290.

In *ALS Scan, Inc. v. Digital Service Consultants, Inc.*, the Fourth Circuit set forth the standard for establishing specific personal jurisdiction based on Internet activity. 293 F.3d at 714. The court concluded "that a State may, consistent with due process, exercise judicial power over a person outside of the State when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." *Id*.

Shortly after *ALS Scan, Inc.* was decided, the Fourth Circuit, in *Young v. New Haven Advocate*, 315 F.3d 256, 263 (4th Cir. 2002), refined the *ALS Scan* test for cases where "the Internet activity" at issue involved "the posting of news articles on a website." *Gilmore v. Jones*, 370 F. Supp. 3d 630, 653 (W.D. Va. 2019). The question in *Young* was whether two Connecticut newspapers and certain members of their staff subjected themselves to personal jurisdiction in Virginia by posting Internet news articles that allegedly defamed the warden of a Virginia prison. *Young*, 315 F.3d at 258. Applying the *ALS Scan* test, the court noted "[w]hen the Internet activity is, as here, the posting of news articles on

8

a website, the *ALS Scan* test works more smoothly when parts one and two of the test are considered together." *Id*. at 263. Thus, when the Internet activity involves posting items on a website, the question is whether the defendant "manifested an intent to direct their website content" to an audience in the forum state. *Id*. The defendant "must, through the Internet postings, manifest an intent to target and focus on [forum state] readers" and the forum state must be the "focal point of the articles." *Id*. at 263-64.

In *Young*, the Fourth Circuit stated the *ALS Scan* test "for determining specific jurisdiction based on Internet contacts is consistent with the one used by the Supreme Court in *Calder v. Jones*." *Id*. at 262; *see also ALS Scan, Inc.*, 293 F.3d at 714 (stating "[t]his standard for reconciling contacts through electronic media with standard due process principles is not dissimilar to that applied by the Supreme Court in *Calder v. Jones*"). The acknowledgment that *ALS Scan* is consistent with *Calder* is important because, in this case, the parties dispute whether this Court should apply the *Calder* effects test or the *ALS Scan/Young* test.

In advocating for either the *Calder* effects test or the *ALS Scan/Young* test, the parties have overlooked the similarities between the two tests. As noted in *Young*, application of *Calder* in the Internet context requires proof that the out-of-state defendant's Internet activity is *expressly targeted at or directed to the forum state*." *Young*, 315 F.3d at 262-63. Similarly, to satisfy the *Calder* effects test, the plaintiff must establish that the defendant expressly aimed his tortious conduct at the forum. *Consulting Eng'rs Corp.*, 561 F.3d at 278. The common thread in *Calder*, *ALS Scan*, and *Young* is whether the defendant *expressly targeted, aimed, or directed his tortious activity to the forum state* such that the forum is the focal point of the tortious activity. *See Young*, 315 F.3d at 262-64. As explained below, Plaintiff fails to establish that Petit or Taylor expressly targeted, aimed, or directed their tortious

9

activity to South Carolina. Because Plaintiff cannot establish the common requirement that the defendant *expressly aimed his tortious conduct at the forum*, Plaintiff fails to satisfy both the *Calder* effects test and the "Internet specific" *ALS Scan/Young* test.

Parker H. Petit

Plaintiff argues this Court can exercise specific personal jurisdiction over Petit because Petit targeted Plaintiff in South Carolina with defamatory remarks about events that occurred within the borders of South Carolina. Plaintiff argues jurisdictional discovery revealed that Petit was talking about Plaintiff when he provided comments in the MiMedx press release and to the Atlanta Journal Constitution. Therefore, Plaintiff argues this case is similar to *Calder* and this Court should exercise personal jurisdiction over Petit based on the "effects" of his Georgia conduct in South Carolina, i.e. the injury or tortious harm suffered by Plaintiff in South Carolina. However, "*Calder* made clear that mere injury to a forum resident is not a sufficient connection to the forum." *Walden*, 571 U.S. at 290. "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id*.

Petit's actions in Georgia did not create sufficient contacts with South Carolina simply because he allegedly directed his conduct at Plaintiff whom he knew had South Carolina connections. *See Walden*, 571 U.S. at 289. "Such reasoning improperly attributes a plaintiff's forum connections to the defendant and makes those connections 'decisive' in the jurisdictional analysis." *Id*. "Although the place the plaintiff feels the alleged injury is plainly relevant to the [jurisdictional] inquiry, it must ultimately be accompanied by the defendant's own contacts with the state if jurisdiction over the defendant is to be upheld." *Consulting Eng'rs Corp.*, 561 F.3d at 280-81. The defendant must have expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious

10

activity. *Id*. at 280.

As to the MiMedx press release, Plaintiff has failed to establish that Petit expressly aimed his alleged defamatory comments at South Carolina or manifested an intent to target South Carolina readers, such that South Carolina can be said to be the focal point of the tortious activity. Petit's comments in the MiMedx press release do not specifically identify Plaintiff, do not mention South Carolina, and do not indicate that Plaintiff is a South Carolina resident. Petit's statements in the press release were general and concerned a number of employees, some of whom were specifically identified even though Plaintiff was not. In his interrogatory responses regarding the MiMedx press release, Petit states that he did not intend to target Plaintiff in particular and he did not intend his remarks to be directed toward readers in South Carolina in particular. [Petit Responses to Interrogatories, ECF No. 56-1 at 13]. Plaintiff has failed to establish by a preponderance of the evidence that Petit's comments in the MiMedx press release were expressly aimed at South Carolina.

As to Petit's comments to the Atlanta Journal-Constitution, Plaintiff has failed to establish that Petit expressly aimed his alleged defamatory comments at South Carolina or manifested an intent to target South Carolina readers, such that South Carolina can be said to be the focal point of the tortious activity. Petit does not specifically identify Plaintiff or identify Plaintiff as a South Carolina resident. According to his interrogatory responses, Petit gave the statement to the Atlanta Journal-Constitution in response to various negative news reports that had been published around the time. The article was entitled "VA workers accused of taking gifts to push Marietta firm's products" [Atlanta Journal-Constitution article, ECF No. 20-2]. At best, the article indicates that MiMedx terminated an unnamed sales representative responsible for the VA facilities involved. Even though the article concerned a South Carolina indictment, Petit states that he did not specifically intend to target readers based in South

11

Carolina. *See* [Petit Responses to Interrogatories, ECF No. 56-1 at 14-15]. The Atlanta Journal-Constitution is MiMedx's hometown paper based in Atlanta, Georgia and Petit believed the paper was read by many MiMedx employees in Georgia. *Id*. Petit states that he believed it was particularly appropriate to speak to the company's hometown paper to address the various negative news reports. *Id*. In concluding that Plaintiff has failed to establish that Petit manifested an intent to target South Carolina readers or expressly aimed his comments at South Carolina, the Court notes that Petit's comments were not made available in the forum by Petit, but were posted online by a third-party publisher. Petit's comments to his hometown paper in Atlanta, Georgia in response to questions about a South Carolina indictment are not sufficient to establish the required minimum contacts with South Carolina for this Court to exercise specific personal jurisdiction over Petit. Plaintiff has failed to establish by a preponderance of the evidence that Petit's comments to the Atlanta Journal-Constitution were expressly aimed at South Carolina.

Because Plaintiff has not shown that Petit expressly aimed his alleged defamatory comments at South Carolina, or manifested an intent to target South Carolina readers, Plaintiff has failed to establish that Petit purposefully availed himself of the privilege of conducting activities in South Carolina. Petit lacks sufficient minimum contacts with South Carolina and could not reasonably anticipate being haled into court here. This Court, therefore, lacks personal jurisdiction over Petit.

<u>William C. Taylor</u>

The only alleged defamatory comment attributed to Taylor appeared in the MiMedx press release. Like Petit, Taylor's comments in the MiMedx press release do not specifically identify Plaintiff, do not mention South Carolina, and do not indicate that Plaintiff is a South Carolina resident. Taylor is simply quoted as saying, "The Company took employment actions with various other employees

based on the degree of transgression and the openness and willingness of these employees to cooperate in the Company's investigation. No legal actions have been taken with individuals who have cooperated and have been truthful with the Company during the investigation." [MiMedx press release, ECF No. 20-1]. According to Taylor's responses to interrogatories completed during jurisdictional discovery, Taylor's comments concerned a total of 17 employees from multiple states. [Taylor Interrogatory Responses, ECF No. 56-2 at 10]. Taylor also states in his interrogatory responses that he did not intend to target Plaintiff in particular or South Carolina readers with his comments in the press release. *Id*. at 13.

Plaintiff has failed to establish by a preponderance of the evidence that Taylor expressly aimed his alleged defamatory comments at South Carolina or manifested an intent to target South Carolina readers. Thus, Plaintiff has failed to establish that Taylor purposefully availed himself of the privilege of conducting activities in South Carolina. Taylor lacks sufficient minimum contacts with South Carolina and could not reasonably anticipate being haled into court here. Accordingly, this Court lacks personal jurisdiction over Taylor.

## Conclusion

For the reasons stated above, Defendants Petit and Taylor's [ECF No. 20] motion to dismiss for lack of personal jurisdiction is **GRANTED**. Plaintiff's defamation/slander claim against Petit and Taylor is **DISMISSED without prejudice**.

IT IS SO ORDERED.

February 3, 2020                           s/ R. Bryan Harwell
Florence, South Carolina               R. Bryan Harwell
                                                    Chief United States District Judge